F. GARDNER & SON, Respondents, v. THE STANDARD INSURANCE COMPANY, Appellants.

### Kansas City Court of Appeals, May 28, 1894.*

1. **Insurance:** CANCELLATION: NOTICE TO AGENT: INTENTION. Notice of a cancellation of an insurance policy must be distinct and given to the holder or an agent authorized to receive it, and not merely to an agent who procured it; it must be unequivocal and must not be of an intention to cancel, but be notice of an actual cancellation.

2. ———: ———: NOTICE. A notice which says the insurer "will cancel" is insufficient; and such notice from an agent of the insured who procured the policy amounts to no more than information through a third person of an intention to cancel.

3. ———: ———: CUSTOM. Where the insured has received information of the insurer's intention to cancel and remains silent and hears nothing more for four or five days, during which time an insurance broker procures another policy to be substituted for the one to be canceled and at the end of that time the broker informs him of the new policy, and after inquiry as to the company issuing it the insured accepts such other policy, there has been no cancellation of the former policy and it still remains in force. Especially is this the case where it is customary for time to be given on a cancellation to get a policy in some other company; the object being not to allow insurance in such case to lapse.

4. **Appellate Practice:** UNCONTROVERTED FACTS: JURY QUESTION. Though the jury trying the case find there was a cancellation of the policy, yet where, as in this case, the facts are uncontroverted, the appellate court must apply to the facts the legal results flowing therefrom.

[This case was not certified to the reporter till November 21, 1894.]

5. Insurance: CANCELLATION: BROKER: GENERAL AGENT. An agent to receive notice of cancellation of an insurance policy must be a general agent having in charge all the insurance business of his principal and not a mere broker to procure an insurance. And the failure of the insured to answer a letter of intention to cancel, from such broker, will not convert him into a general agent to receive notice of cancellation. Cases cited and discussed.

6. ———: ———: RATIFICATION. In this case plaintiffs' satisfaction with the procurement of the policy in suit and returning the former policy can not be held a ratification of the cancellation of the former policy as their approval was four or five days after the issuing of the policy in suit, after such policy had become additional insurance within the prohibition of its terms.

7. Ratification can never disturb an intervening right of a third party.

*Appeal from the Jackson Circuit Court.*—HON. OLIVER H. DEAN, Special Judge.

REVERSED.

*Hugh C. Ward* for appellant.

(1) There was other insurance outstanding. The policy on its face being valid so that it took extrinsic evidence to show its invalidity, the contract of insurance in suit precluded the parties from making such inquiry. *Ins. Co. v. Copeland*, 90 Ala. 386; *Ins. Co. v. Lamar*, 106 Ind. 513; *Ins. Co. v. Hulman & Cox.*, 92 Ill. 145. (2) The Oakland Home policy was valid because under its terms it could only be terminated by an unequivocal notice to the assured that it was actually canceled. Here there was no such notice, but efforts were made to obtain the policy so as to cancel it sometime in the future. May on Insurance [2 Ed.], sec. 67; Wood on Insurance [2 Ed.], sec. 113; *Runkle v. Ins. Co.*, 6 Fed. Rep. 148; *Commercial Union Assurance Co. v. State*, 113 Ind. 331; *Ins. Co. v. Sammons*, 110 Ill. 166. (3) The Oakland Home policy was

valid, because by its terms it could only be terminated by notice of cancellation to the assured. Notice to McGibbons was not authorized. His authority ceased when he obtained and delivered the policy. *Rothschild v. Ins. Co.*, 74 Mo. 41; *Mutual Aid Society v. Ins. Co.*, 84 Va. 116; *Ins. Co. v. Hartwell*, 100 Ind. 56; *Quong Tue Sing v. Assurance Corporation*, 86 Cal. 566; *Farnum v. Ins. Co.*, 83 Cal. 24; *Grace v. Ins. Co.*, 109 U. S. 278; *Hermann v. Ins. Co.*, 100 N. Y. 411. (4). Nor can it be said that the cancellation was completed, because, possibly, McGibbons, after being notified by Johnson & Griffith, transmitted the notice to plaintiff; because Johnson & Griffith could not delegate their duty to notify the assured. *Runkle v. Ins. Co.*, 6 Fed. Rep. 148. (5) It can not, however, be said that McGibbons transmitted to the assured notice of actual cancellation till after the fire. Prior to the fire he only notified the assured the company "will cancel."

*Geo. W. Day* and *Gilbert J. Clark* for respondent.

(1). While an agent to procure insurance may not be clothed with authority to receive notice of cancellation, yet he may be employed to transmit notice of the cancellation to the insured the same as any other instrumentality. *Runkle v. Ins. Co.*, 6 Fed. Rep. 148. (2) If the unauthorized act of an agent be ratified, such ratification relates back to the time of the inception of the transaction. Story on Agency [9 Ed.], sec. 244, p. 288; *Ruggles v. Washington Co.*, 3 Mo. 496. (3) The mode of cancellation of an insurance policy is a matter which concerns only the parties to it and is not the subject of assault collaterally. *Candy and Cracker Co. v. Ins. Co.*, 41 Mo. App. 530. (4) Where an insurance company or its agent has notice of other insurance and makes no objection thereto, such other

insurance is no defense to an action on the policy. *Hamilton et al. v. Ins. Co.*, 94 Mo. 353; *Hayward v. Ins. Co.*, 52 Mo. 181; *Pelkington v. Ins. Co.*, 55 Mo. 172; *Baile v. Ins. Co.*, 73 Mo. 371. And such consent may be shown in evidence under pleadings averring a performance of such conditions. *Maddox v. Ins. Co.*, 39 Mo. App. 198; *Ins. Co. v. Kyle*, 11 Mo. 278; *Russell v. Ins. Co.*, 55 Mo. 585; *Schultz v. Ins. Co.*, 57 Mo. 331; *Okey v. Ins. Co.*, 29 Mo. App. 105.

ELLISON, J.—The policy of insurance sued on in this case, was issued December 20, 1890, and contained, among other provisions, the following: "If there shall be any other insurance, whether valid or otherwise, on the property insured, this policy shall be void." One of the defenses was that there was other insurance outstanding at the time the policy was issued.

The facts shown at the trial were that plaintiffs applied to an insurance agent named McGibbons, of Kansas City, for a policy of insurance on the property covered by the present policy, and that McGibbons, being unable to issue them a policy in any company which he represented, applied to Johnson & Griffith, a firm of insurance agents in Kansas City, who agreed to issue to them a policy in the Oakland Home Insurance Company of California. After a proper survey of the property was had and signed by plaintiffs, Johnson & Griffith wrote a policy of insurance in the Oakland Home Company for one year, for the same amount and on the same property covered by the present policy, and delivered it to McGibbons on December 2, 1890. Within two or three days thereafter McGibbons delivered the policy over to plaintiffs, who kept it until after the fire occurred on December 29, 1890, a space of between three and four weeks. After the policy had been in plaintiffs' possession about ten days, Johnson

& Griffith, who issued it to them, received a telegram from the company at Oakland, dated December 14, 1890, ordering them to cancel the policy, as the risk was prohibited. On the next day, December 15, Johnson & Griffith notified McGibbons that they had received a telegram from the company ordering the policy canceled. It should be stated that the Oakland Home policy contained a stipulation permitting its cancellation on notice and return of unearned premium. McGibbons, upon getting word from Johnson & Griffith that the policy was ordered to be canceled, wrote a letter to plaintiffs saying that the Oakland Company "will cancel the policy I sent you."

Between December 15, the day Johnson & Griffith received the telegram from the Oakland Company to cancel the policy, and the date of the fire, December 29, Johnson & Griffith frequently telephoned to McGibbons for the policy, and McGibbons on several occasions *after* December 20, when he met plaintiffs in Kansas City, notified them that he had another policy, and for them to bring in the Oakland policy, as the agents wanted to send it to the company. Plaintiffs neglected to return the policy. Finally, on the day of the fire, December 29, McGibbons wrote to the plaintiffs the following letter: "Please return the mill policy so that I can send you a new one. The one you have is canceled. I have another ready for you as soon as you return that one." This letter was received by plaintiffs on the next day, and on the latter day McGibbons telegraphed them to "come down at once and bring your policy with you." The next day, December 31, plaintiffs took the policy to Kansas City and delivered it to McGibbons, and received from him the policy in this suit. McGibbons, on the same day, delivered the Oakland policy to Johnson & Griffith, who wrote "canceled" across the face thereof.

The policy in suit, delivered as just stated, was obtained from defendant on December 20, by McGibbons. McGibbons put it in his safe, where it was kept by him until delivered to plaintiffs after the fire, as just stated. Johnson & Griffith wrote "canceled" across the entry of the Oakland policy on their books, but at what period does not appear. One of them was a witness, and was unable to state. There is this important fact (as bearing on the question of McGibbons' conduct) appearing in the case as uncontradicted, that is, that when an agent issues a policy which his company, upon notice of the action of the agent, rejects and orders him to cancel, there is a reasonable time given by custom among the companies to get a policy written in another company.

The question is, was there a cancellation of the Oakland policy before the issuance of the defendant's policy? If there was not, then it constituted other insurance and avoids defendant's policy. To cancel a policy there must be a distinct notice given to the holder or an agent authorized to receive it. Notice to an agent who procured the policy for the holder will not answer. *Rothschild v. Ins. Co.*, 74 Mo. 41. The notice must not be equivocal; it must not be of an intention to cancel, but must be of an actual cancellation.

In May on Insurance [3 Ed.], at section 67, among other things, the author says: "* * * The right of cancellation on notice, reserved by the terms of the policy to either party, should be exercised with care, that the notice be explicit and the conditions strictly complied with. A mere notice of a desire or intention to cancel is not such an exercise of the right of cancellation as will relieve a company from the obligations of the policy. * * * And the exercise of the right will also be confined strictly within the terms under which it is allowable by the provision of the contract. * * *

The notice should be that the policy is then and there canceled."

In Wood on Insurance [2 Ed.], at section 113, among other things, it is said: "* * * In order to cancel a policy so as to extinguish the liability of the insurer, not only must notice be given that the policy *is* canceled, but a ratable proportion of the premium must be refunded or tendered to the assured, and until this is done, the policy remains on foot."

In view of the foregoing rule of law applicable to the cancellation of an insurance policy, was the Oakland policy canceled on the twentieth of December, the day the present policy was issued? For, if it had not been canceled at the time the present policy was issued, the present policy is avoided, although it may have been canceled afterwards. It is not pretended that the agents for the Oakland had any communication whatever with plaintiffs. All that took place on the subject of cancellation was that which occurred between the Oakland agents and McGibbons, and between McGibbons and plaintiffs. All that occurred on this subject between McGibbons and plaintiffs *before* the present policy was issued was the letter of December 15. McGibbons on that day, or the day before, was informed by Johnson & Griffith that the Oakland Company (quoting his language) "refused to carry it," the property insured. "Johnson & Griffith telephoned me about the fifteenth of December that they wanted to cancel the Oakland Home policy, and I wrote Gardner the same day. The agents of the Oakland Home Company telephoned me that they did not want to carry the risk and asked that the policy be taken up." The last sentence of this has reference probably, from what followed, to communications *after* the defendant's policy was issued. Witness Johnson, of the firm of Johnson & Griffith, testified that his firm received a telegram

from the Oakland saying, "Cancel policy six hundred five four eighteen; prohibited." and that upon receipt of the telegram "I notified Mr. McGibbons that we had received a telegram from the company ordering the policy canceled." McGibbons thereupon wrote to plaintiffs the following letter, referred to above:

"KANSAS CITY, December 15, 1830.
*F. Gardner & Son, Parkville, Mo.*

GENTLEMEN: The Oakland Home Insurance Company will cancel the policy I sent you on "Mill." I will send you another policy in a first-class company as soon as the survey you filled out is returned to me by the Oakland Home Insurance Company, which will be in a few days. Currier Commission Company accepted your order for $25 and probably more."

This letter is the first intimation that plaintiffs received from any source that there was dissatisfaction with their Oakland policy on the part of the company. This letter is *all* that plaintiff heard of the matter until after the issuance of the present policy on the twentieth of December. McGibbons and plaintiff both state in their testimony, that the conversations concerning the cancellation were *after* the twentieth. This important fact is the more unmistakably fixed by McGibbons, for, in the conversation, he informed plaintiffs that he had obtained a policy *in another company*, referring to defendant. And one of plaintiffs said in his testimony that McGibbons said, in their conversation, for him "to bring that policy down, that it was canceled, and that he had put me in another good company. I think I asked him what company he had put me in and he said the Standard, of Kansas City, and told me the stockholders that was in it, most of them. Well, says I, that is good enough; I am satisfied; and he told me to bring the policy down."

Though notice to McGibbons can not have the effect of charging plaintiffs with notice, yet conceding, for the moment, that Johnson & Griffith could convey a legal notice of cancellation to plaintiffs through McGibbons, what sort of notice did McGibbons give? Did he give that unequivocal and definite notice informing plaintiffs that the policy. was thereby canceled? By no means. He simply wrote to plaintiffs that "The Oakland Home Insurance Company *will cancel* the policy I sent you on Mill;" and that he would get them a policy in another company "as soon as the survey you filled out is returned to me by the Oakland Home Insurance Company, which will be in a few days." Keeping in mind that at this time, plaintiffs knew nothing of the telegram from the Oakland to Johnson & Griffith, and nothing of any communications between the latter and McGibbons, it is readily seen that it, of itself, can not be made a cancellation within the rule of law we have stated. McGibbons, not being agent for the Oakland, plaintiffs are not informed by him that he had any authority to cancel. He does not inform them that he has been directed to notify them that the policy was canceled. His letter amounted to no more than information coming to plaintiffs' ears through any third person, of the intention of the Oakland company to cancel the policy. His letter, even as matter of information, does not inform them that the policy is, or has been, canceled, but that it will be. Plaintiffs heard nothing more until four or five days after the defendant's policy was issued, when in conversation with McGibbons they were informed that the policy was canceled and that they had been put in another good company. And after having explained to them that the new policy was in a good company and who the stockholders were, one of the plaintiffs then says, "Well, that is good enough, I am

satisfied;" and he promised to bring the policy down. They, however, neglected to bring it down and McGibbons wrote them then, on the day of the fire, to return the policy, that it "is canceled" and that he had the other ready.

From the foregoing there can be no doubt whatever, in my judgment, that the Oakland policy was uncanceled, at least up to the twenty-fourth or twenty-fifth of December. That is the first time plaintiffs learned that it *was* canceled. It is the first action they took upon information that it was canceled. It is clear to me that McGibbons never intended that his letter of the fifteenth should be taken or interpreted as a cancellation of the policy. The most he had in mind was to notify plaintiffs that the policy would be canceled when another in a different company had been written. He says that he had sent for the survey for that purpose. And his testimony as well as that of Johnson was that it was customary for time to be given on cancellation to get a policy in some other company; the object being not to allow insurance, in such case, to lapse.

The foregoing view of the case renders unnecessary several interesting questions discussed by counsel.

We are not unmindful that the jury trying this cause has passed upon the question of cancellation as a fact submitted to them. But the facts as to the action taken on the matter of cancellation are not controverted. There is no room for dispute as to the facts. We must apply to them the legal result flowing from them. The Oakland policy, in plaintiffs' possession until after the fire, was a good outstanding policy unless canceled when defendant's policy was issued on the twentieth of December. There is no pretense that the agents for the Oakland had any communication with the plaintiffs whatever. They communicated

with McGibbons, and he, before the twentieth, communicated with plaintiffs only once, and that was by the letter of December 15, which we have commented upon, in which he conveys information to plaintiffs that the Oakland "will cancel" the policy. After the twentieth, he communicated with one of plaintiffs verbally. He was a witness for plaintiffs and testified on that subject as follows: He was asked by plaintiffs' counsel: "Q. Was it before the writing of that letter (letter of the fifteenth) that you saw Mr. Gardner and had the conversation with him that you have spoken of with reference to the cancellation of the Oakland Home policy? A. No, sir, it was after. this. This was the fifteenth. The survey was returned about the twentieth and I think on the twentieth the policy was written by the Standard to take the place of the Oakland Home policy, and it was after the twentieth, about the twenty-fourth or twenty-fifth, along there, that I saw Mr. Gardner several times in the office of Mr. Currier, or the Currier Commission Company, on whom he had given me an order for $55.80. That is right opposite my office. I could see him going in and out, and I tackled him several times for the policy and he had forgotten it. Q. Did he agree to bring it in? A. He agreed to bring it in each time; and he knew, because I told him, that I had the policy in my safe to take its place."

One of the plaintiffs was himself a witness on this subject; he testified while being examined by his counsel: "Q. When did you next hear anything about that insurance? A. A short time afterwards I got a letter from Mr. McGibbons notifying me—Q. (Showing witness letter.) Just look at that letter Mr. Gardner, and see if that is the first letter you received? A. Well, we were shipping a good deal of wheat down here, pretty near a car load a day, and we were consid-

erably rushed; and I was down here every day or two nearly, and in a few days after I got the notice, Mr. McGibbons called me across the hall in the Exchange building—Mr. Currier's office was right across the hall from Mr. McGibbons—and he told me to. bring that policy down, that it was canceled, and that he had put me *in another good company;* I think I asked him what company he had put me in, and he said the Standard, of Kansas City, and told me the stockholders that was in it, most of them. *Well, says I, that is good enough; I am satisfied; and he told me to bring the policy down.*  Q. Did you afterwards bring that policy down? A. No, sir; I was down—he called my attention to it the second time at the same office, Currier's office, about that policy, it was just an overlook of mine, my not bringing it. Of course I thought it was all safe; he had a good policy, he said.''

Under the legal proposition which we have stated as to cancellation, the letter of the fifteenth was not a cancellation. Whatever else was communicated to plaintiffs was several days after the present policy was issued. There can be but one result following these facts and that is an avoidance of defendant's policy.

The foregoing will, perhaps, not be controverted; but it is met by the contention (which, if well founded, would avoid it) that McGibbons was the agent of plaintiffs, not only to procure the insurance, but to receive notice of the cancellation of the Oakland insurance policy. Now the law is that effective notice of cancellation may be given to the agent of the insured, provided he is the agent for that purpose. If he has in his charge the insured's insurance business—placing and controlling all his insurance, canceling, replacing and substituting policies at his pleasure—as was the fact in *Huggins v. People's Ins. Co.,* 41 Mo. App. 537–539, and in *McCartney v. Ins. Co.,* 33 Mo. App. 652, then he is

an agent authorized to receive notice of cancellation. But the fact that he is an agent to procure insurance, gives him no such authority. *Rothschild v. Ins. Co.*, 74 Mo. 41; *Hermann v. Ins. Co.*, 100 N. Y. 411; *Grace v. Ins. Co.*, 109 U. S. 278; *Indiana Ins. Co. v. Hartwell* 100 Ind. 566; *Insurance Co. v. Raden*, 87 Ala. 311. What are the facts in this case concerning this question? So far as the record shows, plaintiffs and McGibbons were utter strangers and never saw one another until the day plaintiffs went to McGibbons' office to make the "survey" for the insurance. The only authority pretended to have been given was, to use McGibbon's language: "Mr. Gardner authorized me to procure him insurance on his mill in such company as I saw fit." This was as they were making out the "survey" and was merely that McGibbons should select the company, a thing usually done by the insurance agent. McGibbons did, on December 2, procure the insurance in the Oakland company and sent the policy to plaintiffs who retained it until after the fire on the twenty-ninth of December. This procurement of the policy and forwarding it to plaintiffs was *all* that took place between McGibbons and plaintiffs, save a single exception, until after the policy in suit was issued on the twentieth. That exception is the letter of the fifteenth of December, wherein McGibbons informed plaintiffs that the Oakland "will cancel" the policy and that he would send plaintiffs another policy in some other good company as soon as the "survey" plaintiffs had filled out for the Oakland was returned. To this letter plaintiffs made no answer. Is there anything in that unanswered letter to make of McGibbons an agent for the purpose of receiving notice of cancellation? Conceding that McGibbons had received from the agents of the Oakland a notice of cancellation sufficient in form and matter, where is there anything from these plaintiffs *authoriz-*

*ing* him to receive it? The silence of plaintiffs was certainly not authority. They were under no obligation to answer the letter. Besides, the letter itself amounts to nothing in the way of conferring an additional agency on McGibbons. It conveyed merely the information that the Oakland would cancel its policy and that he would get another policy. This letter did not say that the Oakland *had* canceled the policy, but, on the contrary, it may well have meant that that company would cancel it properly and legally by a definite notice to plaintiffs themselves. The letter can not be interpreted as saying that the policy was already canceled, or was thereby canceled, without doing violence to all presumption of correct business dealings, since McGibbons *at the time* he wrote the letter at least, *had not a shadow of authority* in law to receive the notice. It seems to me that it would be going too far to permit this *single* transaction to have the effect of making a special agency in McGibbons for a purpose never mentioned or contemplated by the plaintiffs. And we have already seen that the law does not allow or permit the assumption of agency from the authority to procure insurance.

The cases above cited are strikingly like this case in essential features. In the *Rothschild case*, Blossom was the insurance broker who undertook, at the instance of Rothschild, to obtain insurance for him and had procured to be issued for him several policies in different companies aggregating $15,000, which were conditioned against any insurance beyond that amount. After Blossom obtained these policies and delivered them to Rothschild one of the companies directed its agent to cancel its policy. The agent notified Blossom that the policy was canceled. Whereupon Blossom proceeded to replace it by obtaining another policy. If there had been a valid cancellation the last policy

would not have made the aggregate exceed the limit of $15,000. If the cancellation was ineffective and the policy remained in force, the last policy had the effect of bringing up the total amount above the limit and would, therefore, avoid the policy in that case. The court held that there was no cancellation, and said that, to avoid the deliberate contract of insurance by canceling it, the fact of cancellation must be "distinctly shown; it can never be presumed." So in the *Hermann case*, Hermann gave authority to Kennedy & Buel to place insurance in companies of their own selection on his factory building. They placed it first with some companies which they represented. Afterwards some of these companies refused the risk and duly canceled their policies. Kennedy & Buel then procured, through other agents, the policy sued on in that case, and forwarded it to Hermann, who retained it until after the fire. The defendant company in that case declined the risk and before the fire directed its agents to cancel the policy, and these agents notified Kennedy & Buel of that fact and an arrangement was then made between them and Kennedy & Buel whereby they were to procure a policy in another company to take the place of the policy in suit and that Kennedy & Buel should obtain from Hermann the defendant's policy thus attempted to be canceled. Those agents did procure another policy and delivered it to Kennedy & Buel for Hermann. It was held by the court of appeals of New York that this was not a cancellation, saying: "The defendant reserved the right to cancel the policy on notice to the insured. This condition would be satisfied by personal notice to the plaintiff, or to an agent authorized to receive it. But the authority of a broker employed to procure insurance for his principal, such broker not being a general agent to place and manage insurance

on his principal's property, terminates with the procurement of the policy. It can not in reason be held to continue after the insurance has been procured and the policy has been delivered to the principal. 'An agent to procure a contract' has no power to discharge it implied from the original authority merely. If he possesses that power, it arises from some actual or apparent authority superadded to the mere power to enter into the contract. In this case Kennedy & Buel had no general authority to represent the plaintiff in all matters relating to the insurance as did the agent in the case of *Standard Oil Co. v. Triumph Ins. Co.*, 64 N. Y. 85, nor had they any apparent authority to accept notice of cancellation.''

The only difference between those cases and the one now under consideration is, that in this case McGibbons upon being informed that the Oakland company declined the risk, wrote to plaintiffs the letter of December 15, in which he informed them that the Oakland ''will cancel'' its policy and that he would procure them another policy in some other company, to which plaintiffs made no answer. It is upon this unanswered letter that authority to McGibbons to accept notice of cancellation must rest. It is settled beyond controversy that when McGibbons procured the policy in the Oakland and delivered it to plaintiffs his agency ceased. This is agreed to and asserted by perhaps all the authorities on the subject. Any further agency must, of course, emanate from plaintiffs. That plaintiffs again conferred upon him an agency can not be shown. For if the unanswered letter is asserted to be authority, then it must follow that any one can make himself the agent of another to transact that other's business by simply informing his would be principal that he purposes doing so.

But the suggestion is made that these plaintiffs

ratified the cancellation by expressing satisfaction with the procurement of the policy in suit and afterwards (after the fire) returning the Oakland policy. But it must be remembered, as has been before stated, that plaintiffs' approval of the procurement of this policy was four or five days *after* it was issued—*after it had become additional insurance to the Oakland policy.* Plaintiffs then inquired about this defendant company, its responsibility, standing, etc., and upon becoming assured on these points expressed their approval. But suppose they had not been satisfied (as they might not have been) and rejected the present policy, would any one think for a moment, under the rules of law stated in the authorities cited, that they could not have held the Oakland company under the policy then in their possession for a loss then occurring? Suppose plaintiffs had rejected the procurement of the present policy, as they well might, since they gave no authority for its procurement before it was procured, and the fire had then immediately occurred; could the Oakland have successfully interposed the defense of cancellation? It seems to me to be beyond question that it could not. Therefore the Oakland policy being a valid uncanceled policy for from four to six days after the issuance of the present policy, was additional insurance at the time the present policy was issued and necessarily avoids it. Besides, ratification can never disturb an intervening right of a third party. On the twentieth of December when the present policy was issued, there being *then* additional insurance on the property, the right of this defendant accrued which no subsequent ratification by plaintiffs can annul.

SMITH, P. J., concurring, the judgment will be reversed. GILL, J., dissents in separate opinion on file.