MFA MUTUAL INSURANCE COMPANY,
Respondent,

v.

SOUTHWEST BAPTIST COLLEGE, INC.,
Appellant.

No. 50343.

Supreme Court of Missouri,

Division No. 1.

July 13, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied
Sept. 14, 1964.

Modified on Court's own Motion
Sept. 14, 1964.

Elvin S. Douglas, Bolivar, Allen, Woolsey & Fisher, Harold J. Fisher, Springfield, for appellant.

Farrington & Curtis, E. C. Curtis, Thomas Strong, Springfield, for respondent.

HOUSER, Commissioner.

Action by MFA Mutual Insurance Company under The Declaratory Judgments Act, § 527.010 et seq., V.A.M.S., for an adjudication and determination of the rights of the parties under an insurance policy is-

sued by MFA to Southwest Baptist College with respect to a claim for a fire loss, and to adjudge that the policy was canceled and did not afford protection against the loss. Submitted on motion for summary judgment the circuit court adjudged that the insurance policy had been canceled by the action of the college, was void and afforded the college no protection, and that the insurance company was not obligated to pay the amount specified in the policy, $42,500, or any portion thereof. The college has appealed from the summary judgment.

We have jurisdiction. An amount in excess of $15,000 is in controversy, since the amount of the liability from which MFA seeks to be relieved is $42,500.

A previous administration at the college purchased a total of $79,500 insurance on Pike Auditorium, placing $42,500 of the insurance with MFA. The MFA policy contained an 80% co-insurance clause; a provision for cancellation by insured at any time at the request of insured; a provision for cancellation by MFA by giving insured 5 days' written notice of cancellation, but no provision prohibiting insured from procuring and carrying other or additional insurance or otherwise agreeing upon the effect upon the rights of the parties of carrying such other or additional insurance. A new administration took charge of the affairs of the college. The new business manager found a number of insurance policies in the vault. After looking at them he decided that the insurance program needed attention. Neither he nor the new president (or any other member of the college's staff, as far as the evidence shows) had any knowledge of the existence of the $42,500 MFA policy. The business manager sought the advice and counsel of a local insurance agent, who caused two state agents to make a survey of the buildings for the purpose of making recommendations as to the insurance needs. Their report indicated that the auditorium had a sound value of approximately $60,000 and an estimated insurable value of $57,691. They recommended insurance on the auditorium in the amount of $46,200. The board of trustees of the college, acting on a report of its sub-committees, adopted a general plan of 80% co-insurance on its buildings and contents and authorized the president and business manager to take the necessary steps to effect a complete new insurance program. It was the intention of the college officials to cancel all existing policies and to write a whole new program of insurance, purchasing the maximum insurance allowable on every building; to "take all we could get on all of the buildings." The president and business manager were given broad general authority to cancel all existing policies and purchase new insurance, according to their judgment. The president left the details to the business manager, who undertook to effect the new insurance. The intention was to carry a total of $55,000 on Pike Auditorium and no more, the officials apparently considering that this was the maximum obtainable. There was never any change of intention in respect of the amount, up to the time of the fire. Insurance was taken out on the auditorium for a total of $55,000, in three policies written by three different companies. MFA was not one of the companies sharing this risk. After all of the insurance on all of the buildings within the program had been written, the business manager then caused letters to be written canceling all of the policies of insurance known to the business manager. These letters, all identical in form, stated that the college had adopted a new insurance program and that consequently "the above policy" (referred to by policy number, amount of insurance and expiration date) was enclosed for cancellation as of the date of the letter, and requesting refund of the amount of unearned premiums due on the unexpired term of this policy. For instance, MFA had issued a $2,000 policy on the contents of one of the buildings and, as a part of the cancellation program, MFA received a letter from the business manager stating that the college had adopted a new fire insurance

program, and consequently the $2,000 policy was being enclosed for cancellation with a request for the return of the unearned premium. MFA acknowledged this letter and canceled that small policy. The correspondence between the college and MFA did not mention the $42,500 policy MFA had issued on the auditorium. If the college officials had known of its existence it "probably would have been cancelled"; the fact that the business manager did not know about that policy was the "only reason" that a cancellation letter was not written on that policy. It was the understanding of the business manager that all existing policies on the college buildings, including Pike Auditorium, had been canceled and as far as he knew, prior to his conversation with the agent after the fire, there was no MFA policy on the auditorium. The auditorium was completely destroyed by fire, during the term of the $42,500 policy. A day or two after the fire the local MFA insurance agent called the business manager and suggested that they get together and start the necessary procedure to adjust the loss. The business manager asked what he was talking about and for the first time learned from the agent that MFA had issued the $42,500 policy. In reporting to the board of trustees after the fire the president and business manager reported that the college had $55,000 worth of insurance on the auditorium. The business manager stated in writing: "Fire insurance on Pike was increased last fall to a coverage of $55,000." The college made claims against the three companies which had written the $55,000 policies. These claims were paid in full. After the fire MFA wrote the college that its local agent had brought to MFA's attention that the college had "requested cancellation" of the $42,500 policy but that MFA had not re-

mitted the unearned premium, and enclosed a check for $420 therefor. The college returned the check and made claim under the policy. MFA then brought this suit. After the taking and filing of depositions of various witnesses MFA filed a motion for summary judgment, alleging that it clearly appears from the pleadings and depositions that the college replaced the $42,500 policy with other insurance companies with the intent that the other insurance be substituted for the MFA policy; that the substituted insurance should constitute the only insurance on the building, and by reason thereof the MFA policy was canceled and annulled.

The college's sole point on appeal is that the court erred in finding that the $42,500 policy was canceled through the action of the college in securing new policies of insurance on the property with the intention that the $42,500 policy be canceled because (1) the policy could be canceled only by mutual consent of the parties or by compliance with the policy provisions (request by the insured or 5 days' written notice by the insurer), and could not be canceled "through a mere intent to cancel" on the part of the college, and (2) the policy had no provision voiding it if there was other insurance and there was no mutual agreement of the parties that the securing of other insurance with the intent that such other insurance be substituted therefor would effect a cancellation of the policy.

MFA's contention is that there was a cancellation under the doctrine of cancellation by substitution and replacement, which has been adopted in a number of jurisdictions.[1] MFA says that this question has never been directly considered by the appellate courts of this state, and urges that we now adopt and apply this doctrine in

---

1. Bache v. Great Lakes Ins. Co., 151 Wash. 494, 276 P. 549; Wells Petroleum Co. v. Fidelity-Phenix Fire Ins. Co., D.C., 121 F.Supp. 739; Arnfeld v. Guardian Assur. Co., 172 Pa. 605, 34 A. 580; Finley v. New Brunswick Fire Ins. Co., C.C., 193 F. 195; Larsen v. Thur-

ingia American Ins. Co., 208 Ill. 166, 70 N.E. 31; Pagliero v. Merchants Fire Assur. Corp., 9 Cir., 169 F.2d 373; White v. Insurance Co. of New York, C.C., 93 F. 161; Strauss v. Dubuque Fire & Marine Ins. Co., 132 Cal.App. 283, 22 P.2d 582.

this case, and hold that the action of the college in procuring new insurance with the intention that it replace existing insurance and be substituted therefor, without any intention to acquire additional insurance, constituted in law an effective, voluntary cancellation of the existing insurance.

The policy provision for cancellation follows:

"This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premuim above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

The policy did not provide that the procurement of other or additional insurance would effect a cancellation of the policy.

■ Under the existing law of this state an insurance policy may be terminated and canceled (1) by rescission on some equitable ground such as fraud, deceit, mistake, etc.; (2) by cancellation under the terms of the policy; (3) by cancellation by mutual assent of the parties. Under the existing law a cancellation by one party without the other's assent could not be accomplished except upon strict compliance with the conditions provided in the policy for cancellation. Farmers Mutual Hail Ins. Co. of Mo. v. Minton, Mo.App., 279 S.W.2d 523, 527, and cases cited; Continental Ins. Co. of New York v. Phipps, Mo.App., 190 S. W. 994, 995; 45 C.J.S. Insurance § 442, p. 67. There would have to be an unequivocal, unmistakable act of cancellation, not dependent upon some future event, Chrisman & Sawyer Banking Co. v. Hartford Fire Ins. Co., 75 Mo.App. 310, 314, and a mere intention to cancel would not suffice to effect a cancellation under the policy provisions. Dyche v. Bostian, 361 Mo. 122, 233 S.W.2d 721, 724; Stone v. Stone, 300 S.W.2d 548; Gardner v. The Standard Ins. Co., 58 Mo. App. 611, 616.

MFA does not contend that there has been a rescission by fraud or any other equitable ground of cancellation.

MFA does not contend that there has been a cancellation under the terms of the policy.

■ MFA does not contend, and the trial court did not hold, that the policy was canceled by mutual consent. MFA contends that mutual consent to cancellation is not necessary under the doctrine of substitution and replacement; that cancellation results as a matter of law from the unilateral act of the insured in procuring new insurance with the intent that it take the place of existing insurance and with no intent to acquire additional insurance. MFA takes the position that "the question of mutual consent is of no consequence."

As we understand the doctrine of cancellation by substitution and replacement, as expounded in other jurisdictions, it is part of the doctrine of cancellation by mutual consent; and that "the mere procuring of substituted insurance with the intent to replace existing insurance and without the intent to thereby acquire additional insurance does not per se work a cancelling of the existing insurance. (See Scheel v. German-American Ins. Co., 228 Pa. 44, 76 A. 507, and Ciokewicz v. Lynn Mut. Fire Ins. Co., 212 Wis. 44, 248 N.W. 778, 779.) The distilled rule of Apparel Mfrs. Supply Co. [Apparel Mfrs. Supply Co. v. National Auto. & Cas. Ins. Co., 189 Cal.App.2d 443, 459, 11 Cal.Rptr. 380] is that in order for cancellation to take place by the substitution of one policy for another it must be done by mutual consent or agreement. (See Scheel v. German-American Ins. Co., supra; Home Insurance Co. v. Campbell [Mfg. Co.], 4 Cir., 79 F.2d 588,

590–591.) * * *" Glens Falls Ins. Co. v. Founders' Ins. Co., (1962) 209 Cal.App.2d 157, 25 Cal.Rptr. 753, 761. It requires a meeting of the minds of the contracting parties. It contemplates knowledge and agreement by both parties that the policy is being canceled by substitution and replacement. Cancellation is not accomplished by the unilateral act of insured or his agent in forming an intention to substitute and replace. A mere intention on the part of the insured, not communicated to the insurer, is not sufficient to effect a cancellation by the insured, under this doctrine. Baysdon v. Nationwide Mut. Fire Ins. Co., 259 N.C. 181, 130 S.E.2d 311, 315. Before the original insurer may avail itself of the doctrine and escape liability under the policy it has written the intention of the insured to cancel the original policy and replace it by substituting new insurance must be *communicated to the insurer.* Furthermore, the actual procurement of the issuance of the new insurance with the intention that the new replace the old is not sufficient to effect a cancellation of the old policy. "Procuring additional insurance without requesting the original insurer to cancel its policy does not terminate the policy." Baysdon v. Nationwide Mut. Fire Ins. Co., supra, 130 S.E.2d, l. c. 317. Something more is required. There must be a meeting of the minds—an agreement and mutual consent that the policy be canceled without reference to the provisions of the policy relating to cancellation. Artificial Ice Co. v. Reciprocal Exchange, 192 Iowa 1133, 184 N.W. 756, 764.

The element of communication to and agreement by insurer or its agent, found in the cases cited by MFA,[1] is absent in the case under review. While there was a general intention on the part of the college officials to cancel all existing policies of insurance, no such intention was communicated to MFA in the letter from the college canceling the $2,000 policy, or otherwise. That letter merely informed MFA that the college had "adopted a new fire insurance program." There was not nor

could there have been a specific intention on the part of the college officials to cancel the $42,500 policy, or to buy the $55,000 insurance *as a substitute* for the $42,500 policy, because the college officials had no actual knowledge of the existence of the $42,500 policy. Even a specific intention to cancel the $42,500 policy would not have resulted in its cancellation under this doctrine unless acted upon, i. e., communicated and agreed to by MFA. Neither MFA nor the college requested the cancellation of this policy. Certainly the letter did not constitute an unequivocal, unmistakable request for cancellation of the $42,500 policy, as required. Nothing indicates that, prior to the fire, MFA considered that the college had made a request for cancellation. Its agent considered the policy in force and effect, as evidenced by the suggestion of its agent concerning adjustment of the loss. That MFA did not consider that a request for cancellation had been made is evidenced by the fact that MFA did not request a surrender of the policy or tender a refund of excess of paid premium above the customary short rate for the expired time, until after the fire. Glens Falls Ins. Co. v. Founders' Ins. Co., supra, 25 Cal.Rptr., l. c. 759. The unavoidable fact is that the parties did not agree or mutually assent that the $42,500 policy be canceled. We conclude that the facts would not authorize cancellation under the doctrine of substitution and replacement, even if that doctrine were the established law in this jurisdiction.

■ MFA contends that the college, in asserting that there can be no cancellation except in strict compliance with the policy provision or by mutual consent has completely ignored the rule that the cancellation provisions of a policy of insurance may be waived. Pursuing this theme MFA contends that both parties have waived strict compliance with the policy provisions regarding cancellation; that MFA waived its right to object to the failure of the college to cancel according to the policy provision, and that the college, having claimed the full benefits under the new

policies, which it intended as replacement insurance, is in no position to now claim that its attempted cancellation was ineffective. The questions of waiver and estoppel were no part of the pleadings at the time this matter was submitted on motion for summary judgment, were not a part of the submission, and having been raised for the first time in respondent's brief on appeal, come too late and may not be relied upon in support of this judgment. Stevens v. Missouri Pacific R. Co., Mo.Sup., 355 S.W.2d 122, 127.

 MFA vigorously objects that one should not be permitted to collect twice for the same debt or loss or be unjustly enriched; that out of the new insurance policies the college collected $55,000, which was very near, perhaps more than, the value of the building lost by fire, and that in all equity and good conscience MFA should not be called upon to pay the loss again; that the college should not be permitted to collect the full amount of the new policies and at the same time totally repudiate the purpose for which those policies were purchased, which was replacement merely; that to allow such a recovery would be against the public policy of this state. In the absence of a statute prohibiting recovery from several insuring companies of a sum greater than insured's actual loss or damage,[2] we are of the opinion that the public policy of this statute on this question is to be found in §§ 379.140, 379.-145 and 379.160, par. 3, V.A.M.S., which, applying to the situation where fire insurance policies are issued by more than one company upon the same property and suit is brought on any of the policies, provide that the defendant shall not be permitted to deny that the property insured was worth the aggregate of the several amounts for which it was insured (except in cases of wilful fraud or misrepresentation), and that the measure of damages, in case of total loss, shall be the amount for which the property was insured, less depreciation.

These "valued policy" statutes become a part of each contract of insurance the same as if expressly incorporated in the policy, Michigan Fire & Marine Ins. Co. v. Magee, 240 Mo.App. 767, 218 S.W.2d 151, 155; put at rest the measure of damages in a suit on a fire insurance policy; arbitrarily fix the same as the amount for which the property was insured, less depreciation, and foreclose this Court from considering whether the college, if it recovers on the $42,500 policy, will have received more insurance for its auditorium than it was worth. Horine v. Royal Ins. Co., 199 Mo. App. 107, 201 S.W. 958.

There having been no cancellation by the parties under the contract provision for cancellation; no cancellation by mutual assent of the parties and no policy provision voiding it if insured took out other or additional insurance, the policy remained in full force and effect as a subsisting contract between the parties, and under our valued policy statutes, and in the absence of a statute prohibiting recovery from several insuring companies of a sum greater than insured's actual loss or damage, summary judgment should not have been entered in favor of MFA, canceling the policy, but should have been entered in favor of the college on the issues joined.

The judgment is reversed and the cause remanded for the entry of judgment finding the issue of cancellation for the college and against MFA on MFA's motion for summary judgment and for any further proceedings which may be appropriate.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.

2. See, for example, § 203.11, Wisconsin Statutes.