**Ruby CROMWELL, Administratrix of the Estate of Harl Gene Cromwell, Deceased, Appellant,**

v.

**ACCELERATION LIFE INSURANCE COMPANY, Respondent.**

**No. WD33608.**

Missouri Court of Appeals, Western District.

May 31, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 2, 1983.

William R. Fish, James Welsh, Knipmeyer, McCann, Fish & Smith, Kansas City, for appellant.

John C. Russell, Raytown, for respondent.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

DIXON, Judge.

Defendant prevailed below on plaintiff's claim on a credit life policy. Plaintiff appeals, contending an unaccepted offer to cancel terminated by death of the offeror cannot be as a matter of law a cancellation of the policy. Judgment for defendant reversed and judgment for plaintiff entered in the amount of $23,345.55 with interest at the rate of 9 percent from January 25, 1982, until paid.

The case was tried on stipulated facts, which in essential part show the following.

Plaintiff is the widow and administratrix of Harl Gene Cromwell. On or about October 6, 1977, Cromwell purchased a new 1977 Dodge Mobile Traveler from Independence RV Center. The agreed price was $17,495. Cromwell traded in a smaller trailer and a Dodge truck on the transaction and was allowed $4,495 for the trade-ins, leaving a balance due of $13,000.

Cromwell voluntarily agreed to purchase credit life insurance and credit accident and health insurance covering his installment purchase. The premium amount plus miscellaneous other charges brought the total balance to $16,325.74. This amount, with a finance charge of $9,142.14 for a total of $25,467.88, was financed over a period of 84 months. The premium for the credit life insurance was prepaid to National Acceleration Life.

RV Center was an agent of Acceleration Life Insurance Company for the sale of credit life insurance policies to its customers. RV Center also sold to Nationwide Financial Corporation the installment contract entered into between RV Center and Cromwell.

Nationwide was made the beneficiary on the policy. Cromwell paid $303.19 per month to Nationwide. Subsequent to the issuance of the policy, Cromwell signed an authorization to cancel the insurance. RV Center sent the form to the home office of Acceleration Life Insurance Company, and it was received by that company.

In January 1978 Cromwell brought the recreational vehicle to RV Center and parked it for RV Center to sell. Cromwell continued to make monthly payments to Nationwide of $303.19 until his death on May 21, 1978, when the unpaid balance of his account with Nationwide (which was current) was $23,345.55.

A credit was made to the agency account of RV Center by Accelerated Life Insurance Company and was received by RV Center in December of 1977 or early in 1978. This was a bookkeeping entry on the running account for premiums due from RV Center to Acceleration as agent for Acceleration Life. No notice of any kind was sent to Cromwell or to Nationwide of the purported cancellation by Acceleration or RV Center, Inc., and no refund was made by RV Center, Inc., to either Cromwell or Nationwide before Cromwell's death. There was never any diminution in payments even after the bookkeeping credit to RV Center. The full payments were made for at least seven and possibly nine months after the credit to RV Center.

Nine days after the death of Cromwell, RV Center, Inc., made payment to Nationwide of the credit life premium refund in the amount of $3,323.24. Subsequent to that date, RV Center made two monthly payments of $303.19 to Nationwide. Later, the unit was sold by RV Center, and the entire debt was retired. Following the death of her husband, Ruby Cromwell made demand for payment under the credit life policy, but no payment of any kind was forthcoming, and this suit was commenced.

The single and dispositive issue is the existence of a valid cancellation of the policy under these facts. The parties have briefed and argued this case on the assumption that Cromwell was the insured, Acceleration Life the insurer, and that the described actions of Cromwell and Acceleration are controlling on the issue.

From this premise the plaintiff wife argues that the request for cancellation signed by Cromwell was an offer to cancel and absent a communication to Cromwell of the acceptance of the offer to cancel, there was no "agreement to cancel." Acceleration argues that there was an acceptance and the refund of premiums is sufficient to show the acceptance. Acceleration also argues that there is a unilateral right to cancel and that Cromwell exercised that right.

The basic documents are filed in this court, and they disclose the following arrangement. The document described as a "group credit life policy," "Exhibit B," is a specimen form. By reference to exhibits "C" and "D," the "group policy holder" is RV Center. Under the provisions of the contract, Accelerated Life agreed with RV Center to insure the lives of "Debtors," in this case Cromwell, "for the benefits provided in the attached insuring clauses" in accordance with the provisions of the policy.

The insurance afforded was decreasing term insurance measured by the balance due on the indebtedness of the debtor. The insurance was payable to the "Creditor" and only if a surplus existed after the payment of the debt was any amount to be paid to the named "second beneficiary," if any, otherwise to the estate of the Debtor or his heirs.

"Creditor" was defined in the policy as any sort of lender or provider of services in which payment was arranged through a credit transaction. Significantly, the successor to the right, title, or interest of an original "creditor" was also defined as a "creditor."

Nationwide was referred to as a creditor beneficiary in Exhibits "B" and "C" but was also a "Creditor" because of the assignment from RV Center to Nationwide of the Cromwell obligation. Thus, Nationwide was an "insured" and a "primary beneficiary" in a contract of life insurance that contained *no* provision for a change of beneficiary.

The policy in this case represents an amalgamation of a franchise type policy and a credit life policy. 1 J. Appleman, Insurance Law and Practice §§ 54, 59 (1981). There is a superficial resemblance to a group life policy, but unlike most group type life policies, the instant policy creates a relationship between the insurer and the third party creditor founded upon specific contractual relationships contained in the master policy.

■ The contractual arrangement in this case clearly bespeaks an intent to make Nationwide both an insured and an irrevocable beneficiary under the policy. Thus, the arrangement is not like the third party beneficiary situation in which the beneficiary is not a party to the contract. The defendant Acceleration Life argues explicitly, and the plaintiff widow argues implicitly, that if the acceptance of Cromwell's offer to cancel had been communicated to Cromwell the contract would have been at an end. Such a fact situation would not terminate the rights of Nationwide. The principle was enunciated as long ago as 1919 when the Missouri Supreme Court in

*Bush v. Kansas City Life Insurance Co.,* 214 S.W. 175, 178–79 (Mo.1919), stated:

If the insured could nullify his own contract, under which he obtained financial assistance, by changing the beneficiary, under the circumstances of this case, it would practically destroy the commercial value of an insurance policy as security.

In *Bush,* there was a right to change the beneficiary, but the policy had been issued showing the creditor as beneficiary and describing him as a creditor. Despite an attempt to change the beneficiary, the creditor was held entitled to the proceeds of the policy to the extent of the debt.

■ When the contract at issue is recognized as a three-party transaction, ordinary and well-recognized principles of contract law apply and govern the disposition of this case. When a contract does not specify any manner of cancellation or rescission, the contractual termination of the rights and obligations of the parties can only be accomplished by mutual agreement. 17 G. Couch, Couch Cyclopedia of Insurance Law § 67:1 (2d ed. 1967); *MFA Mutual Ins. Co. v. Southwest Baptist College, Inc.,* 381 S.W.2d 797 (Mo.1964). There is no evidence in this record even suggesting that Nationwide agreed to a cancellation. There is no evidence they were even aware of the attempted cancellation before the death.

The insurance contract on the date of death was a valid contract of insurance. The contract in specific terms provided for the payment of the indebtedness and the payment of any balance of the funds to the heirs of the deceased debtor.

■ It is difficult to determine from this record what occurred to discharge the indebtedness. One of the exhibits indicates a voluntary repossession. This is inconsistent with the stipulated fact that payments on the indebtedness were paid as scheduled even beyond the date of death. The loan was satisfied and the interest of Nationwide in the proceeds of the policy ended with the satisfaction of the debt. The wife was entitled upon payment to pursue the proceeds against the insurer. *Johnson v. Great Heritage Life Insurance Co.,* 490 S.W.2d 686, 691 (Mo.App.1973).

Accelerated argues that Cromwell had a unilateral right to cancel and that he exercised that right. There is no need to consider the right of an individual insured to unilaterally cancel for the simple reason that there is more than one insured in this policy. Nationwide was specifically designated as an insured by the provisions of the policy. If such unilateral right to cancel exists, it must be exercised by both of the insureds. There is no evidence Nationwide intended any such cancellation. It is not necessary to consider the effect of a refund of premiums to the debtor prior to death because under the stipulated facts the refund was never made to the debtor. The refund to Nationwide made after death had no effect on the rights of the wife. There is no claim by Accelerated that they are entitled to an offset as to the refunded premium.

The judgment of the trial court is reversed and judgment entered for the plaintiff in the sum of $23,345.55 plus interest at the rate of 9 percent from January 25, 1982, until paid.

All concur.