WESTERN ASSUR. CO. OF TORONTO, CANADA, v. WARD et al.

(Circuit Court of Appeals, Fifth Circuit. June 2, 1896.)

No. 477.

EQUITY—REFORMATION OF CONTRACT.

Complainants filed a bill against an insurance company, alleging that said company issued to them a policy insuring them against loss by fire on tobacco, their property, or held by them as agents, or on trust as warehousemen; that it was known to the company's agent at the time of the issuance of the policy that the tobacco was mortgaged, and that the tobacco to be insured would be the property of various parties, would be constantly changing, and most of it would be mortgaged; that it was distinctly understood and agreed between complainants and the agent, with the assent of the company, that such mortgages might be permitted, and no notice thereof need be given to the company, notwithstanding a clause in the policy prohibiting incumbrances on personal property without the company's consent; that a loss had occurred, and the company refused to pay on the ground that the incumbrances avoided the policy. And thereupon the bill prayed for a reformation of the policy by inserting a recognition of the mortgages, and for a decree for the amount of the loss covered by the policy. *Held*, on demurrer to the bill, that the court had power to reform the policy, and that the application to do so, and to decree payment of the loss, could not be defeated on the ground that there was an adequate remedy at law.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

Thomas L. Ward & Co., citizens of the state of Florida, presented to the circuit court of the United States for the Northern district of Florida, sitting in chancery, a bill against the Western Assurance Company of Toronto, Canada, and made the following averments: The defendant is a corporation created under the laws of Canada, and carrying on the business of insurance, by resident agents, in the Northern district of Florida. On the 23d of July, 1892, W. W. Wilson, an agent of defendant company at Quincy, Fla., delivered to complainants its policy insuring them against loss from fire, to the amount of $2,500, on certain leaf tobacco, in carrots, boxes, and loose, the property of the insured, or held by them as agents, on commission, or on trust as warehousemen. The tobacco was situated in the tobacco warehouse owned by the Gadsden County Sale & Packing Warehouse Company. At the time the policy was issued there was a mortgage upon a portion of the property thus insured, but before October 18, 1892, Wilson had been notified of the existence of the mortgage, and his knowledge of its existence continued up to and after that date. About October 18, 1892, the warehouse mentioned became a general or public warehouse for the reception and storage of tobacco belonging to divers persons. The complainants became managers, and the policy already issued was altered to meet this change; and the tobacco protected was insured as the property of the plaintiffs, or by them "held in trust or on commission, or sold but not delivered." At the time this change in the business of the complainants was made, Wilson notified them that by reason of the fact that the tobacco to be insured would

belong to various persons, and be constantly shifting in amount, and besides, under the custom of that locality, would be largely mortgaged to various persons, it would be unnecessary to mention such mortgages in taking out insurance in insurance companies represented by him, and that the description of complainants' title as above set forth would prevent such policies from being avoided by the existence of incumbrances on the tobacco insured, in contravention of the clause in the policies prohibiting incumbrances upon personal property without the consent of the insurance companies. Wilson stated that he had been advised so to make this agreement by special agents of the companies which he represented, and whom he had consulted on that point. This statement was also made to Mark W. Monroe, president of the State Bank of Quincy, who held some of the mortgages above mentioned, and who made inquiry of Wilson because he had frequently to rely upon policies of insurance taken out on tobacco in the hands of plaintiffs, as security for the contracts made in his business. Another policy, for $5,000, was issued by Wilson, pursuant to this agreement, and contained the same description of the title of complainants as above set forth. This was done on the 18th of October, 1892. This policy was renewed from time to time, it being reduced to the sum of $2,500; and always, in renewing the policy, the complainants relied on the special stipulations of Wilson as above described. Pursuant to the same agreement, Wilson made no inquiries as to mortgages on the tobacco so insured; but he knew that much, if not all, of the tobacco in said warehouse was mortgaged, and had this in mind when the policies of insurance, including the policy in suit, were issued. Defendants specially aver that the insurance was granted upon the property incumbered by the mortgage or mortgages, and not for insurance upon unincumbered property. This course of business continued until the 16th day of September, 1893, when the tobacco held by them as warehousemen, and also that owned by complainants, was destroyed by fire. The bill alleges that the total value of the property was $12,135.80. The defendant, immediately after the destruction of the property, sent its adjuster to Quincy, Fla., to ascertain and adjust the loss; and thereafter defendant, through its agent, asserted to complainants that it was not liable upon the policy, because of the existence of the mortgage aforesaid, and, on demand, refused to pay the amount of the loss, because, as it insisted, the existence of the mortgage had avoided the policy. The amount due, the bill alleges, is the face value of the policy, to wit, $2,500. The prayers of the bill are that the court will reform the policy so that it will truly set forth the contract of insurance made between the complainants and defendant, by inserting therein a recognition of the mortgage upon the property as hereinbefore stated, and the right of complainant to have and permit mortgages thereon without violating the policy, and that the defendants be decreed to pay complainants the sum lost by them as aforesaid, together with 10 per cent. attorney's fees, as allowed by the statute law of Florida. A copy of the policy is annexed, and it contains a provision to the effect that the same should be avoided if there was a mortgage on the property, or any portion of same, covered by the existing policy, unless a memorandum of such mortgage was indorsed in writing upon the said policy. The defendant demurred to the bill upon the ground that the complainants have a complete and adequate remedy at law, and, further, that it appears in and by the allegations of the bill of complaint, and the exhibits attached thereto and made a part thereof, that one of the terms and conditions of said policy was that the same should be void if there was any mortgage upon the property covered by the said policy, unless a memorandum of said mortgage was indorsed upon such policy, and it is not shown that any such notice or memorandum was indorsed thereon. Subject to the demurrer, an answer was filed, in which the defendant admitted that Wilson was its agent, and also admitted that there was a mortgage upon the property insured, at the time it was insured, and that this mortgage continued up to the time of the alleged destruction of the property by fire. It admits the allegation in complainants' bill that Wilson was advised of the existence of this mortgage at the time he issued the policy of insurance, and that in all the policies issued by Wilson after the 18th day of October, 1892, the title of the property insured was described as alleged in complainants' bill. There are other matters set out in the answer, but the

above statement is sufficient for the decision of the questions submitted to this court.

The court overruled the demurrer, and, on the hearing, rendered a decree in favor of the complainants, granting the relief prayed for in the bill, and particularly decreeing "that the policy set forth in the bill be, and is hereby, reformed so as to recognize therein the rights of the owners of the property insured thereby to incumber, during the existence of said insurance, the said property by mortgages, without notice to the defendant or its agents, and without indorsement upon said policy. And, considering the said policy as so reformed, it is further ordered, adjudged, and decreed that the defend- ant is indebted to the complainants, for the loss sustained by them and in- sured by said policy, in the sum of $2,865.49, principal and interest, and that they do have and recover of and from the said defendant the said sum, to- gether with the sum of $137.80 costs, and do have execution therefor." Thereupon the defendant prayed for and was allowed an appeal. Several assignments of error were made, but the appellant, for the purposes of this· appeal, relies upon two grounds only: First. That the court erred in refusing to sustain the demurrer for the reason that the complainants had an adequate remedy at law. Second. Because the policy contains this clause: "It is a part of the consideration of this policy, and the basis upon which the rate of premium is fixed, that the assured shall at all times maintain a total of in- surance on the property insured by this policy of not less than eighty per cent. of the total cash value thereof (as covered under the several items of this policy), and that, failing so to do, the assured shall become co-insurers to the extent of the deficiency, and in that event shall bear their proportion of any loss occurring under this policy." This clause required the assured to take out policies to an amount equal to 80 per cent. of the value of all tobacco embraced within the description; that is, 80 per cent. of all tobacco in the warehouse, "their own, or held by them in trust or on commission," and provided that if they did not do so they should become co-insurers to the extent of the deficiency, and in that event should bear their proportion of any loss. Under this clause, in estimating the extent of appellant's lia- bility under the policy, the defendant insists that we must start upon the basis of insurance, to the extent of such 80 per cent. The defendant insists that the total value of the tobacco in the warehouse of the insured, owned or held by them in trust or on commission, or sold but not delivered, at the time of the fire, was $20,000. The insurance, taking into account the amount carried by the insured, was $16,000. It is alleged in the bill that the total loss and damage was $11,933.80. · The defendant insists that in any event it is only liable for ⁵/₃₂ of the amount, with interest from 60 days after the proof of loss was filed with it, or $1,864.65, with such interest; the decree having been rendered against it for the full amount of the policy, or $2,500, with interest.

C. C. Tomkins and Alex Troy, for appellant.

W. A. Blount and A. C. Blount, Jr., for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge (after stating the facts). The power to reform a written contract which does not, in material matters, cor- rectly set forth the agreement of the parties, is definitely settled, upon principle and authority. In the case of Thompson v. Insur- ance Co., 136 U. S. 295, 10 Sup. Ct. 1019, there was an agreement between Receiver Kearney and the company that the insurance should run to him as receiver, and to his successors, and also to those whom it might concern, and that by inadvertence, accident, and mis- take, upon the part of both Kearney and the company, the policy was not so framed. The court (Mr. Justice Harlan delivering the opinion) declared:

"If, by inadvertence, accident, or mistake, the terms of the contract were not fully set forth in the policy, the plaintiff is entitled to have it reformed so as to express the real agreement without the necessity of resorting to extrinsic proof. The case made by the amended bill is within the decision in Snell v. Insurance Co., 98 U. S. 85, 88, where the court said: 'We have before us a contract from which, by mistake, material stipulations have been omitted, whereby the true intent and meaning of the parties are not fully or accurately expressed. A definite concluded agreement as to insurance, which in point of time preceded the preparation and delivery of the policy, is established by regular and exact evidence which removes all doubt as to the understanding of the parties. In the attempt to reduce the contract to writing, there has been a mutual mistake, caused chiefly by that party who now seeks to limit the insurance to an interest in the property less than that agreed to be insured. The written agreement did not effect that which the parties intended. That a court of equity can afford relief in such a case is, we think, well settled by the authorities.' "

This clear and unanimous holding of the supreme court is conclusive. Enough, then, as to the power of the court.

The objection that there is an adequate remedy at law, which will defeat the application in equity, may be disposed of with equal facility, and by reference to the same high authority. In the case of Tayloe v. Insurance Co., 9 How. 390, the complainant relied upon correspondence of the insurance company, in which the latter made known the terms upon which it was willing to insure; and the insured placed a letter in the post office, accepting the terms. There the court compelled the issuance of the policy, although the loss occurred while the letter of acceptance by the persons seeking insurance was in process of transmission through the mails. The complainant prayed the interposition of a court of equity, and the exercise of its power to compel specific performance. It was objected that the suit might have been brought at law on the contract as expressed by the correspondence, and, since there was an adequate remedy at law, there was no necessity to apply to a court of equity.

"This," said Mr. Justice Nelson for the court, "may very well be admitted, but it by no means follows from this that the court of chancery will not entertain jurisdiction. Had the suit been instituted before the loss occurred, the appropriate, if not the only, remedy would have been in that court,—to enforce a specific performance, and compel the company to issue the policy. And this remedy is as appropriate after as before the loss, if not as essential, in order to facilitate the proceedings at law. No doubt, a count could have been framed upon the agreement to insure, so as to have maintained the action at law, but the proceedings would have been more complicated and embarrassing than upon the policy. The party, therefore, had a right to resort to a court of equity to compel a delivery of the policy, either before or after the happening of the loss; and, being properly in that court after the loss happened, it is according to the established course of proceedings, in order to avoid delay and expense to the parties, to proceed and give such final relief as the circumstances of the case demand. Such relief was given in the case of Motteux v. Assurance Co., 1 Atk. 545, and in Perkins v. Insurance Co., 4 Cow. 646. See, also, 1 Duer, Ins. 66, 110, and 2 Phil. Ins. 583. As the only real question in the case is the one which a court of equity must necessarily have to decide in the exercise of its peculiar jurisdiction in enforcing a specific execution of the agreement, it would be an idle technicality for that court to turn the party over to his remedy at law upon the policy. And, no doubt, it was a strong sense of this injustice that led the court, at an early day, to establish the rule that having properly acquired jurisdiction over the subject, for a necessary purpose, it was the duty

of the court to proceed and do final and complete justice between the parties, where it could as well be given in that court as in proceedings at law."

There are, moreover, numerous authorities to the effect that, before an application to equity can be defeated for the reason that there is an adequate remedy at law, it must be made to appear that the latter, both in respect of the final relief and the mode of obtaining it, is as sufficient as the remedy which equity could confer under the same circumstances. Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594.

This principle is otherwise expressed in Barber v. Barber, 21 How. 591:

"It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and efficacious to the ends of justice and its prompt administration as the remedy in equity;" citing Boyce's Ex'rs v. Grundy, 3 Pet. 210; U. S. v. Howland, 4 Wheat. 108; Osborn v. Bank, 9 Wheat. 841, 842.

It remains to be determined, did the complainants' averments, admitted as they were by the defendant, make a case which gave the court in equity jurisdiction, and which will support the decree? It is sufficient to say that we have before us the clear and uncontested proof that there was between the agent of the defendant and the complainants a contract, for insurance at that time and thereafter, to be taken out upon property, which, within the knowledge of both parties, was incumbered, and which in the course of business was to be further incumbered. This contract, by the result of a mutual mistake, was not expressed in the policy issued by the company and accepted by the insured. Then the latter has a clear right to compel a reformation of the policy so that it will speak the truth of the actual contract itself. It follows that we must regard the action of the court below in overruling the demurrer as in accordance with the settled principles of equity. In one respect only do we think the decree should be modified. It is plain that complainants did not comply with their obligations to keep 80 per cent. of the value of the tobacco described in the policy covered by insurance. It appears from the testimony of T. L. Ward, one of the complainants, that the market value of the tobacco in the warehouse at the time of the fire was $20,000. The loss was $11,933.80, and the insurance on all the tobacco was $16,000. The defendants, then, are liable only for $5/32$ of the amount, with interest from 60 days after the proof of loss was filed with it, or $1,864.65, with such interest. The decree of the court below was for the full amount of the policy, and interest from some date not apparent; and it should be modified by reducing the amount to $1,864.65, with interest thereon from March 20, 1894, and as so modified the decree should be affirmed. Each party will pay his own costs arising out of this appeal. And it is so ordered.