JUDSON et al., Appellants, v. MULLINAX.

Division Two, October 17, 1898.

1. **Deed**: MISTAKES IN DESCRIPTION: PROOF. Before a court of equity can correct mistakes in the description of property conveyed, the mistakes must be shown by clear and cogent proof, fully satisfying the chancellor of its existence. The evidence in this case has been reviewed, and the conclusion reached that the deed did not incorrectly describe the property sold.

*Appeal from Mercer Circuit Court.*—HON. PARIS C. STEPP, Judge.

AFFIRMED.

*H. J. Alley* and *Orton & Orton* for appellants.

(1) In the description of lands fixed monuments or boundaries control distances and quantity. If the field was sold then the fact that it did or did not make sixty-four feet five inches off of lot 12 was immaterial. 2 Wash. on Real Prop. [Ed. 1862] 631; *Harding v. Wright,* 119 Mo. 1; *Myers v. St. Louis,* 82 Mo. 367; *Smith v. Catlin Co.,* 117 Mo. 438; *West v. Bretelle,* 115 Mo. 653; *Whittelsey v. Kellogg,* 28 Mo. 404; *Orrick v. Bower,* 29 Mo. 210. (2) Courts of equity will correct conveyances so as to make them conform to the intent

of the parties.  *Ezell v. Peyton,* 134 Mo. 484; *Hook v. Craighead,* 32 Mo. 405; *Leitensdorfer v. Delphy,* 15 Mo. 160; *Sparks v. Brown,* 46 Mo. App. 530; *Gillespie v. Moon,* 2 John Ch. 586; *Andrews v. Gillispie,* 47 N. Y. 487; *Blodget v. Hobert,* 18 Vt. 414; *Fuch v. Treat,* 41 Ill. 404.    (3)    Although the words as inserted in the deed were agreed to by both parties, yet if such words of description did not in fact accomplish the purpose intended the court should correct the deed so as to make it conform to the intent of the parties.  *Leitensdorfer v. Delpl i,* 15 Mo. 160; *Bush v. Hicks,* 69 N. Y. 298.

*M. F. Robinson* and *Ira B. Hyde* for respondent.

(1)    Before a deed can be corrected for mistake there must be shown both the original intent and the fact of the mistake.    15 Am. and Eng. Ency. [1Ed.] 632.  (2)    Where a reformation of a deed is sought, evidence of the grantor's intentions are inadmissible unless it be shown that they were understood by the grantee.  *Bobb v. Bobb,* 7 Mo. App. 501.  (3)    The mistake must be mutual and unintentional.  *Bartlett v. Brown,* 121 Mo. 353; *Frederick v. Henderson,* 94 Mo. 98; *Henderson v. Beasley,* 137 Mo. 199.    (4)    The evidence must be clear and convincing and such as to leave no reasonable doubt that a mistake has been committed.    1 Story's Eq. Jur. [13 Ed.], sec. 156; *Downing v. McHugh,* 3 Mo. App. 594; *Bobb v. Bobb,* 7 Mo. App. 501; *Turner v. Shaw,* 96 Mo. 22; *Bartlett v. Brown,* 121 Mo. 353.  (5)    Possession by adjoining proprietors of land up to what they both erroneously suppose to be the true dividing line between them with no intention on the part of either to claim beyond the true line, will not work a disseizin in favor of either of any land so erroneously occupied by him.  *Lamm v.*

*Kellogg*, 49 Mo. 118; *Houx v. Battem*, 68 Mo. 84; *Schad v. Sharp*, 95 Mo. 735; *Mc Williams v. Samuel*, 123 Mo. 659; *Ernsting v. Gleason*, 137 Mo. 594.

GANTT, P. J.—This is a suit in equity to reform a warranty deed executed by plaintiffs to defendant, on the ninth of August, 1894. The description of the land in the deed is in these words: "The following described lots, tracts or parcels of land lying, being and situate in the county of Mercer and State of Missouri, to wit: All lots numbered two and eleven in Clements addition to the town of Princeton and all that part of Clements addition bounded as follows: Commencing at the southeast corner of said lot eleven and running thence east seventeen feet and thence in a northerly direction to the northeast corner of said lot two and thence in a southerly direction along the last line of said lots two and eleven, to the place of beginning. And all that part of said lot one bounded as follows: Commencing at the north part of said lot one and running south along the east line of said lot one two hundred and ninteen feet and eight inches; thence west to the east line of the lot described, thence in a northerly direction to the place of beginning. Also all that tract of land between said lot two and Oak street, as now located. Also lot thirteen *and sixty-four and five inches off the west side of lot twelve in Clements addition to the town of Princeton.*"

Plaintiffs allege that in writing said deed the same was so drawn as to include and convey a part of said lot 12 not intended by the parties to said deed to be included in and conveyed thereby *in this*: that the said deed purported to convey sixty-four feet and five inches off of the west side of said lot 12 instead of "all that part of said lot twelve west of said post and board fence," which said post and board fence com-

menced at the south end of said lot 12 at a point seventeen feet five inches east of the southwest corner and runs thence northerly to the north line of said lot 12 and thirty four feet east of the northwest corner of said lot.'' The accompanying plat will more clearly indicate the lines of the several lots and tracts as set out in the deed. The *red* line through lot 12 shows the location of the east line of defendant's land according to the deed. The dotted line running north and south through said lot 12 represents the fence which plaintiffs allege was intended to be the eastern line of the parcel conveyed.

The circuit court made a finding of facts as follows:

1. The court finds as facts proven in this case that at the time of the purchase by defendant of the property from the plaintiff, the property the plaintiff claimed to own was inclosed in three inclosures by fences the inclosure on which was situated the house, the barn yard and the pasture lot, including lot 13 and that part of lot 12 west of the post and board fence in controversy. And the court further finds that the part of lot twelve not in said pasture lot was inclosed and used at the time by other parties as a part of the Boyd and Lane property; and that on the land in controversy, east of said fence, was situate at the time an out house—a small privy—of the value of $3, belonging to the Boyd property; and that a part of the land in controversy, at the time, constituted a part of the garden and yard of the Lane property, and within thirty feet of the house thereon; and that the Boyd and Lane property, as then used and occupied was separated from the said pasture lot by the fence in controversy.

2. And the court further finds that the defendant made a personal inspection of the premises at the time

of negotiating the purchase and knew in a general way of the location of the fence separating the said pasture lot from the Boyd and Lane property, and did not at the time understand that he was buying any part of the Lane and Boyd property, as then the same was inclosed.

3. The court further finds as a fact that at the time the trade was made the defendant knew that the part of lot twelve, east of the fence, was inclosed and used by other parties, and that the plaintiff did not claim it as a part of the property sold to defendant, except that there was no agreement that said fence was to be taken as the exact line.

4. The court further finds that at the time of the completion of the trade the defendant did not believe or understand that he had purchased any part of the land east of the fence in controversy.

5. The court finds that during the pendency of the negotiations for the purchase of the property the defendant was advised that the said fence was on or about the boundary line between the pasture field bought by him and the Lane and Boyd property, and that he so thought and understood until long after the completion of the trade.

The court finds the facts to be that the defendant and plaintiff, while the negotiation for purchase and sale of said property was pending, went on a part of said property and where they could see across the same in a general way examine it, and that the plaintiff informed the defendant that the property had never been surveyed, but that the fences (save on the west) were supposed to be about on the line, but that no fence on said property or inclosing any part thereof was fixed as a monument or boundary line of said property.

The court finds that plaintiff believed he owned sixty-four feet and five inches off the west side of lot

12, and intended to convey to defendant and defendant believed he was buying said strip of sixty-four feet and five inches off the west side of said lot 12, and that the deed as written correctly described the land that plaintiff at the time believed he owned and intended to sell to defendant, except that he believed the fence was about the line.

Upon the final hearing the court dismissed the bill and gave judgment for defendant, and after unsuccessful motions for new trial, plaintiff appealed to this court.

I. The evidence most clearly establishes that plaintiff's deed described the land just as Mrs. Thompson's deed to plaintiff described it. It conveyed exactly the amount of land which the plaintiff Judson thought he owned in lot 12. There was no evidence of any mistake in drawing the deed so far as the scrivener and defendant are concerned. The finding of the circuit court "that plaintiff believed he owned 64 feet 5 inches off of the west side of lot 12 and intended to convey it to defendant and defendant believed he was buying said strip of 64 feet 5 inches off of the west side of said lot 12 and that the deed as written correctly described the land that plaintiff at the time believed he owned and intended to sell to defendant except that he believed the fence was about the line" is almost conclusively shown by the testimony. The effort of plaintiffs was to show that defendant understood he was only buying to the fence but the evidence was that when Judson, the plaintiff, was showing defendant the property, they stood quite a distance from this rear portion of the lot and defendant inquired of plaintiff if the fences were on the lines and plaintiff replied, "I don't know. We have never taken a survey. I suppose they are something near it." To which defendant responded that if he bought "he would see that the

fences were on the line; that he would have a survey made and when there were new fences they would be put on the line." There was no agreement that the fence should be the line. All the evidence is inconsistent with such a theory. Mrs. Thompson had owned all the land in the plat, and had conveyed the land in the deed by the same description to plaintiff, and all the subsequent deeds were limited by the description in the Judson deed. That a court of equity may correct mistakes in, and reform written instruments is familiar law, but that the mistake must first be shown by clear and cogent proof fully satisfying the chancellor is equally well settled law. This has not been done in this case. *Sweet v. Owens*, 109 Mo. 1; *Bartlett v. Brown*, 121 Mo. 353.

Fully concurring in the judgment of the circuit court it is affirmed. SHERWOOD and BURGESS, JJ., concur.