MARY E. HORINE and R. W. HORINE, Respondents, v. THE ROYAL INSURANCE COMPANY (LIMITED) OF LIVERPOOL, Appellant.

Springfield Court of Appeals, March 11, 1918.

1. REFORMATION OF INSTRUMENTS: Right to Remedy: Proof Required. To warrant reformation of instrument for mistake, the mistake must be mutual, and the party asserting such mistake must prove it by evidence which leaves no reasonable doubt in the mind of the court, though the same degree of proof required in criminal cases is not necessary.

2. INSURANCE: Evidence: Sufficiency. Evidence *held* to show mutual mistake in an insurance policy upon property of the wife drawn in favor of the husband which the insurer's agent told plaintiff was valid in spite of the variance in ownership.

3. REFORMATION OF INSTRUMENTS: Mistake: Character of Mistake. Where the owner of property told the agent on seeing the policy that she owned the property and the policy was in the husband's name and the agent assured her that the policy protected her against loss, there was a mutual mistake of mixed law and fact warranting reformation of the policy.

4. INSURANCE: Fire Insurance: Instructions: "Total Loss." In an action on fire policy, instruction that if the building could have been repaired with materials of like kind and quality, and so put in as good condition as before the fire, plaintiff could recover only the cost of repairing the building, sufficiently defined "total loss" in a negative way.

5. APPEAL AND ERROR: Scope of Review. In action on fire policy, where there was substantial evidence of total loss, the finding of fact that there was a total loss cannot be overturned.

6. INSURANCE: Instructions: Total Loss. In action on policy insuring a barn consisting of a main building and several extensions, a general instruction limiting recovery to cost of repairs if the building could have been repaired was sufficient, and it was not necessary to instruct on partial loss as to the various additions to the building.

7. ————: Fire Insurance: Total Destruction of Building: "Wholly Destroyed." There need not be an absolute extinction of all the parts of a building in order for it to be "wholly destroyed."

8. **FIRE INSURANCE**: Total Loss. In view of R. S. 1909, sec. 7020, as to valued policies, one whose barn was insured in several companies could recover on a valued policy the full amount of the policy regardless of other insurance.

9. **EVIDENCE**: Admission: Testimony. Where insured testified that after a fire a new barn was built which cost $900, but there was no evidence that it was substantially the same as the old barn, there was no admission that the old barn was duplicated for $900, which was less than the face value of the policy.

Appeal from Lawrence Circuit Court.—*Hon. Charles L. Henson,* Judge.

AFFIRMED.

*Goad & Schmook* for appellant.

*H. H. Bloss* for respondents.

FARRINGTON, J.—This is an action to reform a three-year term policy of fire insurance, and to recover on the policy as reformed. The circuit court, a jury being waived, reformed the policy as prayed and then gave judgment for the face value, of the policy and defendant appeals.

The petition was in two counts. The first, in equity, in the name of R. W. Horine and Mary E. Horine, his wife, asks for a reformation of a policy issued September 6, 1915, by defendant to R. W. Horine, as assured in the aggregate sum of $2300 covering these items: $500 on dwelling house; $300 on household goods; $1000 on a shingle roof frame building and additions occupied and to be occupied as a private horse stable, or carriage house or barn; and $500 on horses and cows contained therein; all located on certain lots in Aurora, Missouri. It is alleged that when the policy was delivered to the wife she called defendant's agent's attention to the fact that the policy was written in the name of her husband whereas the title to the property was in her, and that the agent replied that it would make no difference whether the title was in R. W. Horine or Mary E. Horine and that if any loss occurred

it would be promptly paid; that the wife, relying on said statement and believing it to be true was induced thereby to pay to defendant the premium of $18.40 and was also induced thereby to not make any further effort to secure other insurance or to have said policy changed so that the name of the assured would be the same name in which the title vested; that the name of the assured in the policy "was by reason of the fault, misconduct and acts of the defendant itself incorrectly stated and given" without any fault on the part of the plaintiffs; that the title to said real estate was on September 6, 1915, and ever since has been in plaintiff wife; and that the plaintiff husband disclaims any right to the proceeds from the policy if the same shall be paid or collected in this suit or otherwise by his co-plaintiff. It is then alleged that on August 4, 1916, the barn was totally destroyed by fire, and the prayer is for reformation of the policy so that the name of plaintiff wife may appear as assured.

The count at law asks for recovery in the sum of $1000.

The answer to the first count admitted the issuance of the policy to R. W. Horine and that Mary E. Horine was then and is now the owner of said real estate but averred that defendant had no knowledge or notice that she was the owner, or that her husband was not the owner thereof, until after the fire; that as soon as it was so advised it tendered, before suit, to plaintiffs, the premium on such policy and the one of which it was the renewal with interest from date of each policy; and it denied specifically every other allegation, denying that it made any other contract or had any other agreement or understanding with plaintiffs, or either of them than the one expressed in the policy.

The evidence as to what transpired before and at the time of the delivery of the policy in question is in irreconcilable conflict. The plaintiff's version was that the agent took it upon herself to write up the policy as it was written without any directions whatsoever from either plaintiff, and that when the agent

brought the policy to the Horine home the conversation occurred which is recited in the petition and this is positively testified to by both Mary E. Horine and Alta Gatts, her daughter, whereupon the premium was paid. Both witnesses (last above mentioned) testified that when the agent delivered the policy Mary E. Horine looked at it and then asked the agent would it make any difference that the title was in her name and the policy in the name of her husband, and that the agent replied that it would not make a particle of difference because they (the husband and wife) did not do business separately. The husband was not present. Defendant's version was altogether different, being that this policy was a renewal of a policy written September 6, 1912, covering the same subject-matter, between the same parties, same amounts and all; that the husband in the wife's presence had given directions to defendant's local agent's clerk, Mrs. Oldaker, how to write the original policy, and that it was written in the name of R. W. Horine and delivered and remained in the hands of the Horines in that form during the entire three-year period; that Mrs. Oldaker went to inspect the risk before preparing the renewal policy, as required by the rules of the company, and inquired of the wife (the husband not being present) whether any change should be made in the policy in any way from the original policy and was told there was none; that the renewal policy was subsequently mailed, not delivered in person, and that no such conversation ever occurred as detailed by Mrs. Horine and her daughter, and that some time after the policy was issued Mrs. Horine came to the insurance company's office and gave her check for $18.40 premium. It thus appears that the testimony is in square conflict.

As stated, the husband was made a party to this suit merely for the purpose of disclaiming any interest in the loss on the barn. It is undisputed that the title was in the wife and that the policy contained several items some of which covered property owned by the husband; that is, some of the items in this policy covered

property actually owned by the husband. It is admitted that the policy was merely a renewal of one that had been in force for three years in practically the same condition.

In order to reform a written instrument it is said: "Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only a certainty of error." [Sweet v. Owens, 109 Mo. 1. c. 7, 18 S. W. 928.] "Every presumption is in favor of the instrument as it is, and the evidence must be unequivocal to show both that an error was committed and also its precise character." [State ex rel. to use of Frank v. Frank, 51 Mo. 1. c. 99.] "A court of equity has jurisdiction to reform a policy of insurance, or other written contract, upon parol evidence, when the agreement really made by both parties has not been correctly incorporated into the instrument, through accident or mistake, in the framing of it; but both the agreement and the mistake must be made out by the clearest evidence, according to the understanding of both parties, as to what the contract was intended to be, and upon testimony entirely exact and satisfactory; and it must appear that the mistake consisted in not drawing up the instrument according to the agreement that was made." [Tesson v. Atlantic Mut. Ins. Co., 40 Mo. 1. c. 36.] The burden is upon the party asserting the mistake, and the mistake must be mutual. [Parker v. Vanhoozer, 142 Mo. 1. c. 627, 44 S. W. 728; see also, Aetna Life Ins. Co. v. American Zinc, L. & S. Co., 169 Mo. App. 1. c. 561, 154 S. W. 827; Greditzer v. Continental Ins. Co., 91 Mo. App. 534.] It is not claimed in the case at bar that there was any fraud or any misrepresentation of a material fact.

The mistake alleged, relied upon, and testified to by the plaintiff and her witness, her daughter, was the legal effect of the policy on her interest and property in such policy when written in the name of her husband, her testimony being that she called the agent's attention to the fact that the property belonged to her and that

the insurance was written in her husband's name, and that the agent assured her that that insured her property.

In order for a chancellor to correct a mutual mistake where the mistake is one of fact, or one of mixed fact and law, or one existing because of a misunderstanding as to the legal effect of the language of the written instrument, the plaintiff asking for a reformation must show by clear and cogent proof that the mistake was mutual, and what the contract was which was intended between the parties and which would have been made were it not for such mistake. [Judson v. Mullinax, 145 Mo. 630, 636, 47 S. W. 565.] The evidence must be such as to leave no reasonable doubt in the mind of the court as to these points. [Hearne v. Marine Ins. Co., 20 Wall. 488, 22 L. Ed. 395; Hockstein v. Berghauser, 123 Cal. 681, 56 Pac. 547.] And while it is said that the mistake must be proven beyond a reasonable doubt, the courts do not generally require the degree of proof required by the criminal law. [Southard v. Curley, 134 N. Y. 148, 30 Am. St. Rep. 643, 31 N. E. 330; Wall v. Meilke, 89 Minn. 232, 94 N. W. 688.]

The rule in Missouri seems to be that the evidence must be clear, cogent and convincing; and while courts of equity are not prone to get entirely away from the common-law rule that oral evidence will not be permitted to vary or alter the terms of a written instrument, and the rule that a written contract is presumed to contain the whole contract entered into by the parties, they will reform an instrument where it is apparent (bearing in mind the solemnity of the written contract and the force that goes with it) that a mistake has been made in reducing the contract to writing that the parties intended to make; and in applying the equitable rule the courts have been inclined to use stronger expressions as to the theory upon which the cases should be decided than they have practiced in deciding the individual cases. Thus we see the expression that the chancellor must be convinced beyond a reasonable doubt, and that a mere preponderance of the evidence will not suffice,

and the like. As we view the rule in equity, after taking into consideration the force of the written instrument and the solemn facts which it evidences, if the plaintiff has evidence which convinces the chancellor that notwithstanding these a mistake has been made, a reformation may be granted. In the case of Williamson v. Brown, 195 Mo. 313, 93 S. W. 791, where there was a conflict in the evidence, our Supreme Court granted reformation; and other Missouri cases may be found where the relief has been granted though there was conflicting evidence and though it could not be said that the mistake was proven beyond a reasonable doubt as we understand that expression in criminal law.

In the case at bar the plaintiff testified positively that she called the agent's attention to the fact, when this policy was delivered, that it was written in the name of plaintiff's husband whereas she owned the property, and plaintiff's daughter was as positive in her testimony that this occurred. It is also shown that prior to the delivery of the policy which is the basis of this action another insurance agent writing insurance on some of plaintiff's property called her attention to the fact that a policy of insurance should be written in her name and not in that of her husband, and it was therefore but the natural and reasonable thing for her to do when she did notice (as it was her duty to do) that this policy in suit was written in her husband's name to call the attention of the agent who was delivering it to that fact.

It is admitted by both parties that the real contract of insurance was to insure this barn in the name of the real owner. That, then, was the mutual intent of both parties and their mutual contract, and defendant's witness, the agent, admits and says that if she had known that the title was in the name of Mrs. Horine she would gladly have issued the policy to Mrs. Horine in her own name.

It is true that contracts of insurance are and should be personal contracts, and insurance companies

199 Mo. App.—8

have the right to say, we will insure this house if owned by you, but will not insure it if it is owned by someone else, because they have the right in making the contract to insure those in whom they have confidence as to honesty, integrity, and the like. But in this case that right amounts to nothing because the company says it had no objection to insuring Mrs. Horine but would gladly have issued the policy in her name had it known she was the owner.

We must hold with the trial court that the evidence of what the real contract between the parties was is established and that the instrument did not conform thereto or set forth that contract, all of which is so conclusive and convincing as to satisfy this court that a mutual mistake was made.

The next question: What was the character of the mistake made? It undoubtedly was not a mistake of fact. Nor was it a pure mistake of law, using that term in its narrowest sense. It was a mistake and a mutual mistake by the parties as to the legal effect of writing the name of R. W. Horine rather than that of Mrs. R. W. Horine in the policy. Plaintiff's evidence clearly shows that on calling the agent's attention to this fact she was assured that the effect of the policy as it stood was to insure her property which was in her name. And the courts have held that where the mutual mistake is as to the legal effect of the wording or language used in the contract, equity will relieve against such mistake by reforming the instrument. In Williamson v. Brown, supra, l. c. 332, our Supreme Court quotes with approval from 2 Pom. Eq. Jur., sec. 845, as follows: "In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing." And our Supreme Court in that case discusses this question and sustains the view of Pomeroy.

The question has arisen in a number of courts, all holding that a mistake as to the legal effect of an expression in or the language of a contract is a ground for reformation.

Thus, in the case of Woodbury Savings Bank v. Charter Oak Ins. Co., 31 Conn. 517, where the agent and the insured were mistaken as to the legal effect of writing the policy in the name of the mortgagor the court reformed the policy to carry out the real contract intended between them, and said: "There was a mutual mistake as to the proper mode of filling out the papers on both sides. The application was made out in the wrong name and the policy was made to the wrong person. But there was no fraud or misrepresentation. The papers would have been made out right if they had known how to do it, and it is immaterial whether the mistake was one of fact or of law."

In the case of Maher v. Hibernia Ins. Co., 67 N. Y. 283, there was a policy of fire insurance upon plaintiff's building described as "occupied as a dwelling." A portion of the lower story was occupied as a grocery and the residue of the house as a dwelling. In an action on the policy it was alleged and proven that the plaintiff and the local agent of the insurer who issued the policy knew at the time how the building was occupied and that they both intended to insure it as it was actually occupied, and both thought the terms used in the description in the policy would properly designate the occupation, and plaintiff, doubting whether the intention had been well carried out, called the agent's attention to the erroneous description and was assured by him that it made no difference, that the words used were apt and ample to express their meaning and intention. A reformation was granted.

In Taylor v. Glens Fall Ins. Co. (Fla.), 32 So. 887, where property which stood in the name of the wife and had been so insured, the wife died, and the husband acting for himself and the heirs asked that the policy be renewed, which was renewed in the name of the deceased wife, the fact that she was dead being

known to the agent, the policy was by the court reformed, it being held that the real intention of the contract of insurance was to insure the property in the name of the owner.

In the case of Abraham v. North German Ins. Co., 40 Fed. 717, the company through its agent insured the property in question for the benefit of Abraham, the real owner thereof, and was paid by him for so doing. The company through its agent filled out the policy and so worded it that in legal effect it insured another man's interest in whose name the business was carried on. The court in disposing of the question of reformation said: "When, however, the mistake lies, not in a misunderstanding of the principles of the law as controlling the subject of the contract, or the rights of the parties connected therewith, but merely in the terms proper to be used in defining the actual contract of the parties, such a mistake, though in one sense a mistake of law, is one that a court of equity will correct."

In Fink v. Queen Ins. Co., 24 Fed. 318, where a policy was issued to secure a mortgage of the insured property but by mistake was made in the name of the owner of the property instead of the mortgagee who was the contracting party for the insurance, and the property was destroyed by fire during the term of the policy, the court held that it would be against equity to not permit a reformation of the contract.

In Pitcher v. Hennessey, 48 N. Y. 415, where both parties misunderstood the meaning of the term "risk of navigation," the court held that the contract could be reformed to express their real intention, and held that when parties have made an agreement and there is no allegation of any mistake in it, and in reducing it to writing they by mistake, either because they did not understand the meaning of the words used or their legal effect failed to embody their intention in the instrument, equity will grant relief by reformation of the instrument and compel the parties to execute their agreement as they made it.

In The Globe Ins. Co. v. Boyle, 21 Ohio St. 119, where a policy of insurance was issued on property devised to the testator's children and to his widow and executrix, the party insured in the policy was described as the widow executrix. The court held that reformation should be made so that the owners of the property, to-wit, the heirs and the widow, could recover the insurance, because the insurance was made for the benefit of the owners of the property and was so intended when the policy was issued.

It was held in the leading case of Snell v. Atlantic F. and M. Ins. Co., 98 U. S. 85, 25 L. Ed. 52, that the assent of one Keith to insure being made in his name was superinduced by representations of the company's agent that insurance in that form would fully protect the interests of the firm in some cotton, and that the representations were not made with any intention to mislead or entrap the insured. It was, however, evident that Keith relied upon the representations, and that it was not unreasonable to rely upon the larger knowledge and experience of the insurance agent in these matters. He trusted the agent with the preparation of a written agreement which should correctly express the meaning of the contracting parties. The case holds that in the absence of laches or negligence, equity will relieve against such a mistake. [See, also: Thompson v. The Phenix Ins. Co., 136 U. S. 287, 34 L. Ed. 408; Hunt v. Administrators of Rousmaniere, 26 U. S. 1, 7 L. Ed. 27; Eastman v. Provident Mut. Relief Assn., 65 N. H. 176, 23 Am. St. Rep. 29; Avery v. Equitable Life Assur. Soc. (N. Y.), 23 N. E. 3; Hartford Fire Ins. Co. v. McCarthy (Kas.), 77 Pac. 90; Western Assur. Co. of Toronto v. Ward, 75 Fed. 338; Sias v. The Roger Williams Ins. Co., 8 Fed. 183; Palmer v. Hartford Fire Ins. Co. (Conn.), 9 Atl. 248; Esch Brothers v. Home Ins. Co., 78 Iowa, 334, 16 Am. St. Rep. 443; Lansing v. Commercial Union Assur. Co. (Nebr.), 93 N. W. 756.]

Another case which the writer has read but cannot at this time find was where a lienor went to an insurance agent and asked to have his interest insured. The agent

insured him, naming him as mortgagee. When the policy was delivered the insured called attention to the fact that he was not a mortgagee but had a mechanic's lien, whereupon the agent assured him that, written as it was, it covered his interest and protected him against loss by fire. In a suit to reform the contract the court gave the relief.

We must therefore hold, on abundant authority, that when Mrs. Horine informed the agent that the property was in her name and the policy was written in the name of her husband and was assured by the agent that it protected her against loss by fire, such a mistake occurred as will be relieved against, and the intention of the parties to insure the property for the real owner will be carried out by reforming the policy so as to make it conform to the contract which the parties understood they were making.

As stated, the court gave judgment for the face value of the policy, $1000.

The answer as to this branch of the case pleaded that at the time of the fire the plaintiff wife held another fire policy on the barn in question for $400 in the Hartford Fire Insurance Company issued June 15, 1915; that in her proof of loss made to the Hartford Company she stated the amount of loss to be $570 and thereupon received said $400 from the Hartford company; that $570 was the extent of the damage to the barn, which was only a partial loss, and that $570 was sufficient to repair the damage so that the barn would be in as good condition as before the fire; and that defendant had offered to pay and duly tendered to plaintiff the difference between the entire amount of such damage and $400 collected by plaintiff from the Hartford company, together with all the accrued costs of this action, and that it is still willing to pay such difference, $170, and costs.

The reply was a general denial.

The policy, which was filed with the petition, contained the usual provision that the company would not

be liable for a greater proportion of any loss than the amount thereby insured shall bear to the whole insurance covering the property.

The policy also contained the provision that the damage should in no event exceed what it would cost the assured to repair or replace with material of like kind and quality.

Before the trial of this second count commenced defendant gave notice and duly made offer, under the statute, to allow plaintiffs to take judgment against it for $170 and accrued costs, defendant's theory being that the evidence would show that the damage could be completely repaired for $570 and that plaintiff wife had already collected the $400 from the Hartford company. This offer was not accepted.

The court made a specific finding that the allegations of the second count of the petition were true and that the barn was totally destroyed by fire.

Appellant does not contend there is no substantial evidence to support a finding of total loss. The contention is that the court committed reversible error in refusing to give two declarations of law which defined "a total loss."

The following declaration of law, given, was asked by the appellant:

"The court declares the law to be that the clause in the policy sued on, to-wit:

" 'This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality.'

"is legal and valid, and the plaintiff is bound thereby. Therefore, if the court finds from the evidence that there was not a total loss *as defined in other instructions given,* and if the court further finds from the

evidence that said building could have been repaired with materials of like kind and quality so that said building when so repaired would be in as good condition as before the fire, then plaintiff is limited in his right to recover in this case to such sum, if any, as the court finds from the evidence would be the reasonable cost to plaintiff to so repair the building with materials of like kind and quality, less such sum as the court finds from the evidence plaintiff has received from other insurance companies on account of said loss.'' (Italics are ours.)

The only other declaration of law given was that there could be no recovery of attorney fees or damages for vexatious refusal to pay.

We think the declaration of law given for appellant sufficiently covers the ground covered in the two declarations of law refused which affirmatively define what is a ''total loss,'' whereas the declaration given puts it the other way, setting forth what is not a total loss. It is a rule often stated that in actions at law, tried by the court without a jury, declarations of law are important only as indicating the theory on which the case was tried. [Fairbanks, M. & Co. v. Coulson Stock Food Co., 151 Mo. App. l. c. 263, 131 S. W. 894.] As a matter of fact the declaration given for appellant goes farther than the two refused in that it omits all reference to whether there was much or little of the structure left standing, using the broad phrase *''if it could have been repaired.''* Since the court gave that declaration of law for defendant (appellant) it is in no position to complain of the refusal of the other two. The court, therefore, found that ''it could not have been repaired'' with materials of like kind and quality so that the building when so repaired would be in as good condition as before the fire. The issue throughout the evidence was clearly marked, plaintiffs' witnesses testifying to the complete destruction of the barn and defendant's witnesses saying it was at most a partial loss. While the evidence is thus in conflict as to the extent of the damage done by the fire, there is sub-

stantial evidence of a total loss, so that this finding of fact is sustained and we are as powerless to overturn it as if it were embodied in a verdict of a jury upon a similar record.

As to the other declaration of law refused (to the effect that if the court found that the addition extending north from the west end of the main building remained standing and was uninjured after the fire there was not a total loss), the appellant did not bring up the evidence as to this in its abstract. However, the evidence is presented in respondents' additional abstract. According to defendant's own witnesses there were several parts to this barn; that is, it had been built and then added to from time to time. We think the declaration of law given covered the whole barn (which of course included the additions) and that it was not necessary for the court to thereafter take up each of the several parts and make separate declarations of law as to them. R. W. Horine testified that this shed extension was also damaged and that he could not even use it for the purpose of putting horses in there after the fire until he had placed new lumber on the roof, and no witness disputes this. Moreover, it was a very small extension. There need not be an absolute extinction of all the parts of a building in order for it to be "wholly destroyed." [Havens v. Insurance Co., 123 Mo. 1. c. 422-423, 27 S. W. 718.]

Appellant says the court erred in excluding the evidence of one McGregor as it tended to prove only a partial loss. This evidence is not in the original abstract, nor in the respondents' additional abstract, but forms, along with a good deal more evidence, a sort of rear guard, appearing only in a third abstract for which appellant is sponsor. So far as we can see all of McGregor's testimony went in without objection except when he undertook to summarize what had been said previously by him, saying he supposed there was from one-third, not to exceed one-half loss on the building, and the court of course struck out that supposition.

Because of its own course of examination of its witnesses the defendant is not entitled to complain of the fact that the court admitted evidence as to the cost of a new barn built on the site of the old one.

The question whether the plaintiff received more insurance for this barn than it was worth is not before us for decision if there was a total loss, and that finding is sustained. The "valued policy" law as to real estate (Sec. 7020, R. S. 1909) as it stands today was enacted in 1889 (Sec. 5897, R. S. 1889), and, as stated in Daggs v. Insurance Co., 136 Mo. 1. c. 389, 38 S. W. 85, Sec. 5897, R. S. 1889, was "similar in principle" to Sec. 6009, R. S. 1879, which was construed in Havens v. Insurance Co., 123 Mo. 1. c. 417, 418, 27 S. W. 718, wherein the Supreme Court held that where several concurrent fire policies have been written on a building which is wholly destroyed, each company is liable for the full amount of the policy. [See, Smith v. Insurance Co., 195 Mo. App. 1. c. 384, 191 S. W. 1034.] While R. W. Horine testified that a new barn was built which cost $900, and another witness testified that it was built on the foundation of the old barn and that the roof of the new barn cost about the same as the roof of the old barn, there is no evidence that the new structure was substantially the same as the old one; indeed, defendant was objecting to this line of evidence on the ground that there was no showing that the two structures were substantially the same. Therefore it cannot even be said that plaintiffs conceded that the barn was duplicated for $900.

It follows from what has been said that the judgment must be affirmed as rendered. *Sturgis, P. J.,* and *Bradley, J.,* concur.