ERICKSON REFRIGERATED TRANS-
PORT, INC., and Erickson Transport Com-
pany, Inc., Plaintiffs-Respondents,

v.

CANAL INSURANCE COMPANY,
Defendant-Appellant.

No. 9100.

Springfield Court of Appeals,
Missouri.

Nov. 12, 1971.

Paul D. Rittershouse, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for defendant-appellant.

Paul L. Bradshaw, Joseph A. Bohrer, Neale, Newman, Bradshaw & Freeman, Springfield, for plaintiffs-respondents.

HOGAN, Judge.

This is an action to reform and recover upon an insurance policy issued by defendant Canal Insurance Company (hereinafter called Canal) covering one 1963 Hiway Reefer semitrailer in the name of Edward Dauthinais, against the peril of loss by theft, larceny, robbery or pilferage. Alleging that the trailer had been stolen near Kearney, New Jersey, while the policy was in force, plaintiff Erickson Transport Company (hereinafter called Erickson) made a claim for $6,958.97, the value of the trailer, asserting at the same time that it was entitled to have the policy reformed so as to insure itself, that is, to show Erickson Transport as the named insured. The trial court, sitting without a jury, has reformed the policy and rendered judgment in favor of Erickson in the amount of $6,128.49, with interest from the date of demand. Canal appeals.

During the time here in question, there were several Erickson corporations which engaged in trucking and transport operations. Erickson Refrigerated Transport, Inc., was engaged in transporting refrigerated commodities; Erickson Motor was engaged in leasing truck equipment; and Erickson Transport, incorporated in Wisconsin, was engaged in tank truck operations. All of the corporations owned tractors and trailers. The trailer in question was owned by Erickson Transport, which held a Wisconsin certificate of title, but was leased to Erickson Refrigerated Transport. The certificate of title shows a lien in favor of the Citizens Bank of Springfield, Missouri.

At some time in 1965, the Erickson corporations decided to sell some of their equipment to their operators in order to raise working capital. The tractors and trailers were sold to the operators on an installment basis, using a conditional sales contract as an instrument of transfer. Erickson continued to hold title to the equipment, payments were deducted on a mileage basis, or, as plaintiffs' general manager put it, "[w]e collected so-many cents per mile * * * deductible from the settlement for each trip." When the full amount of the purchase price was paid, the purchasers, or "owner-operators," as Erickson referred to them, were given certificates of title to the equipment.

Erickson decided to insure the vehicles being sold against fire, theft and physical damage, and requested instruction from a Mr. Homer Lentz, who was a general agent for Canal. Mr. Lentz was aware that Erickson was selling equipment to its drivers, and according to his trial testimony, "* * * we had a blanket policy, a blanket agreement that Erickson would pay the premium and who it [the equipment] was titled to didn't make any difference to us." After having a "long telephone conversation" with a Mr. Gordon Rogers, at Canal's home office, Mr. Lentz advised Erickson that Canal could write policies to cover the vehicles being sold. The trial court found, and the record supports the finding, that Canal understood what Erickson proposed to do with the units which were being sold, and that Mr. Lentz explained that one of the Erickson corporations would retain title to the particular piece of equipment until it was fully paid for.

In any case, Erickson sold the trailer in question to Mr. Dauthinais, using a condi-

tional sales contract executed at Omaha, Nebraska, on December 1, 1965. Mr. Alf Erickson, plaintiffs' general manager, testified that he did not see or even know Mr. Dauthinais, but he approved the transaction. It was Mr. Erickson's evidence that he had been instructed by Mr. Lentz that the person to whom the vehicle was being sold should be named as the insured, and that the loss payee was to be shown as one of the Erickson corporations or the Citizens Bank, rather than the owner of the vehicle. A separate policy was to be issued on each vehicle. It was agreed between Mr. Lentz and Mr. Erickson that when a sale was made, the required information could simply be telephoned to Mr. Lentz's office, and a policy would be issued. The record indicates that when the policy in suit was issued, Mr. Erickson called Mr. Lentz's office, contacted his secretary, a Miss Patricia Johnson, and gave her the information he had been instructed to give her. Canal wrote and issued the policy on its policy form, carrying serial number B–12941, describing the insured vehicle as a 1963 Hiway Reefer, motor number 6335161. It was signed by Miss Johnson for Canal. As indicated, the trailer was insured against loss by theft. The insured named was Edward Dauthinais and the loss payee was Erickson Refrigerated Transport, Inc. The trailer was stolen, payment on the policy was refused, and this action followed.

Canal raises but a single point on this appeal. As stated in its brief, that point is that the trial court "erred in reforming the policy * * * by including Transport as the named insured, there being no evidence that it was intended that Transport should be the named insured; on the contrary, all of the evidence adduced by the plaintiffs was to the effect that the policy was written exactly as intended." Erickson answers this point by saying that Mr. Alf Erickson fully informed Lentz of the proposed sales, including the fact that whichever of the Erickson corporations owned a piece of equipment would not assign title; that also Erickson informed Lentz it desired a poli-

cy which would protect the Erickson interests; that both Mr. Alf Erickson and Lentz intended the policy to protect the plaintiffs' interests inasmuch as Erickson was the owner and holder of the title purported to be insured; and that Lentz mistakenly instructed Mr. Alf Erickson to have the policy written so that it did not in fact insure anyone, despite the fact that the policy could have been written so as to protect Erickson's interest as the parties intended.

Canal has cited a number of cases dealing generally with the power of courts of equity to reform written instruments. Two of them, Leimkuehler v. Shoemaker, Mo., 329 S.W.2d 726, and Walters v. Tucker, Mo., 308 S.W.2d 673, (both considering the reformation of conveyances) state the general principle that any mistake affording ground for relief by reformation must be mutual and common to both parties to the instrument, that it must appear that both have done what neither intended, and that the mutual mistake, in order to justify the relief of reformation, must be established by clear and convincing evidence. Further cited is State ex rel. State Highway Commission v. Schwabe, Mo., 335 S. W.2d 15, in which the power of courts to reform written instruments because of a mistake of law is discussed, the court noting, among other things, 335 S.W.2d at 21, that generally any mutual mistake made by the parties to the instrument may be corrected by reformation irrespective of the question whether the mistake is one of law or fact, although the decisions of our courts may not be in full accord with the general law. Canal has also cited a good many additional authorities, but it is unnecessary for our purposes to discuss and differentiate them severally, for in our view they are not controlling or decisive of the appeal. The substance of Canal's argument, as we follow it, is that it cannot be said here that both parties did what neither intended with respect to the policy in suit; that to the contrary Erickson had no interest in insuring equipment which it owned, but only that which it was selling;

# 340

and that the only mistake shown upon the record is Erickson's supposition that a conditional sales contract was effective to transfer an insurable interest in the vehicle or trailer to the purchaser. We cannot agree, principally because we believe the case turns on principles of law peculiarly applicable to insurance contracts.

■ Though the rationale of the cases is not uniform, it is generally true that when an applicant for insurance correctly states his interest in the property to be insured and distinctly asks for insurance thereon, and the agent of the insurer agrees to comply with his request and assumes to decide on the form of the policy to be written for that purpose, but by mistake of law adopts a form which does not cover such an interest, equity will reform the policy so as to make it cover that interest. Horine v. Royal Ins. Co., 199 Mo.App. 107, 114–115, 201 S.W. 958, 960–961[3]; 43 Am. Jur.2d Insurance, § 362, p. 414; 7 Appleman, Insurance Law & Practice, § 4256, p. 21 (1962); 45 Am.Jur. Reformation of Instruments, § 51, p. 613. Some cases, for example Snell v. Atlantic F. & M. Ins. Co., 98 U.S. 85, 25 L.Ed. 52, emphasize the applicant's right to rely upon the insurer's representation that a particular interest or insured is protected because of the insurer's superior knowledge; others seem to allow reformation on the simple ground that when, through the fault or omission of the insurer, the policy does not cover the person or property intended, it may be reformed if it is shown that the agent had knowledge of the person or interest to be insured. See, e.g., Western Casualty and Surety Co. v. Herman, 8 Cir., 318 F.2d 50, 56[12, 13], 1 A.L.R.3d 1184, 1192; Great American Ins. Co. v. Johnson, 4 Cir., 25 F. 2d 847, 848–849[6]; Heath Delivery Service, Inc. v. Michigan Mut. Liability Co., 257 Mich. 482, 241 N.W. 191, 192[4]; Anno., 1 A.L.R.3d 885, 894–896, § 6[a] (1965). Still other cases are rationalized on the basis that the insurer with knowledge of the facts is estopped to take advantage of its agent's mistake or error in insuring the person or interest sought to be protected. See, e.g., Phoenix Indemnity Co. v. Marquette Casualty Co., 5 Cir., 320 F.2d 486, 492–493[3]. Whatever may be the true rationale of the decided cases, it is clear that they support the general rule stated in the texts and exemplified by the *Horine* case.

■ In this case, there is no question as to Mr. Lentz's authority to bind Canal; Mr. Lentz's contract, or "agency agreement," (Plaintiffs' Exhibit 1) shows that he had authority to accept risks, issue policies, and collect premiums. He was, in short, a general agent for Canal. Corder v. Morgan Roofing Co., 355 Mo. 127, 138, 195 S.W.2d 441, 445[1]; Gaines v. Berkshire Life Ins. Co., 228 Mo.App. 319, 323, 68 S.W.2d 905, 907[4, 5]. The record also indicates that his secretary, Miss Johnson, who actually signed the policy in suit, "was licensed by the company to write policies * * * as well as [Lentz] was." The knowledge of these agents was the knowledge of the insurer, Canal being charged with the information gained by Mr. Lentz as their agent, McGee v. Capital Mut. Ass'n of Jefferson City, Mo.App., 116 S.W.2d 204, 205[2]; Zeilman v. Central Mut. Ins. Ass'n, 224 Mo.App. 145, 150, 22 S.W.2d 88, 91[7], at least in the absence of fraud or collusion between the applicant and the agent, which is not shown here. See generally, 43 Am.Jur.2d Insurance, § 1063, p. 987. Lentz testified that as to the trailer insured here, " * * * from my personal knowledge I knew title was in Erickson's name," and that he was "selling this piece of equipment to Dauthinais." He further testified that he had a "blanket agreement that Erickson would pay the premium and who it was titled to didn't make any difference." Mr. Lentz insisted he had been told by Canal that it would agree to naming the purchaser as the insured, even though Erickson held the title; his testimony was that Mr. Gordon Rogers, one of Canal's officers, "understood the whole situation perfectly," and that "[his] understanding with Gordon Rogers was that it didn't make any difference who the mort-

gage holder was, we would name the mortgage holder on it * * * it didn't make any difference where the title was, who owned it or anything, just name—name the mortgage holder and it covered the particular piece of equipment." Mr. Lentz did testify, incidentally, that he knew "there is a requirement" in Missouri that the certificate of title be signed by the owner in order to transfer title, and that under our law one cannot acquire ownership of a motor vehicle without transfer of the certificate. He did not testify that he understood anything about the law of Nebraska where the sale was consummated, nor indicate that he knew the conditional vendee of an automobile has no insurable interest whatever in the vehicle. Mr. Lentz said he advised Mr. Erickson that Canal could write the policy naming the driver as insured, and Erickson as loss payee, and stated that "* * * it's an unusual agreement, but I wanted to make sure that the unit was covered *regardless of where it was titled.*" (Our emphasis.) And, Mr. Lentz went on, "Canal Insurance Company agreed to it."

Mr. Erickson testified that he told Lentz about the corporation's plans to dispose of its equipment, and that he explained the procedure which Erickson would use. He explained that Erickson would continue to hold the title until it had been fully paid for, and told Lentz that he "wanted to protect our own corporations." He asked Lentz how the insurance should be written to accomplish that object. He was told by Lentz that "the purchaser's name should be on the policy as the named insured." [1] Lentz further instructed Mr. Erickson "to make the loss payee to [sic] one of the Erickson corporations or the Citizens Bank

rather than the owner of the equipment." Erickson was told to give Miss Johnson "the make, the year, the original cost price and the amount we [Erickson] wanted it insured for." Erickson testified that with regard to the policy in suit, he called Miss Johnson and gave her the necessary information, following Mr. Lentz's instructions. One of the Erickson corporations paid the premium on all the policies; in this particular instance, the premium was paid by Erickson Transport. In our view, the case clearly comes within the general rule stated above, that is, that when the applicant for insurance correctly states his interest in the property to be insured and distinctly asked for insurance thereon, and the agent of the insurer agrees to comply with his request but by mistake of law adopts a form which does not cover such an interest, the policy may be reformed to cover that interest.

Canal argues that because both parties used the language they intended to use, there can be no reformation, and in any case the reformation of the policy by adding Erickson as an insured was not warranted because the record shows, as it does, that Erickson did not intend to insure any of the vehicles or equipment owned by the corporation. We do not find these arguments persuasive in the circumstances of this case. The mistake, as noted in Great American Ins. Co. v. Johnson, supra, 25 F. 2d at 848, and Horine v. Royal Ins. Co., supra, 199 Mo.App. at 114, 201 S.W. 958 at 960[3], was not a mere mistake as to the name of the insured; it was a mistake as to who was protected by the policy. As such it was a mutual mistake as to the legal effect of the wording of the contract, and subject to relief by reformation. Herr v.

---

1. This evidence was received over objection, but we regard it as admissible. Mr. Lentz was deceased at trial time, and of course his admissions as Canal's contracting agent would have been inadmissible if he had been the only contracting agent, Kern v. Prudential Insurance Company of America, 8 Cir., 293 F.2d 251, 259, cert. denied 368 U.S. 969, 82 S.Ct.

443, 7 L.Ed.2d 397, but Miss Johnson, Canal's *other* contracting agent, was alive and would have been competent to testify if she had been called as a witness. Meyer v. Dubinsky Realty Co., Mo.App., 133 S.W.2d 1106, 1110 [7, 8]; Birdsall v. Coon, 157 Mo.App. 439, 448, 139 S.W. 243, 246 [2].

Underwriters at Lloyds of London, 13 Alaska, 264, 97 F.Supp. 379, 380[1]; Horine v. Royal Ins. Co., supra, 199 Mo.App. at 114, 201 S.W. at 960[3]. Contrary to Canal's assertion, there is no doubt in our minds that the Erickson corporation intended the policy to protect its own interest; Mr. Alf Erickson so testified directly. As for Canal's argument that substitution or addition of Erickson Transport as a named insured was not justified, the only way in which the policy could be reformed to comport with the intention of the parties was to add or substitute Erickson as a named insured. The trailer was sold in Nebraska, under a Nebraska conditional sales contract. Under the law of Nebraska, Mr. Dauthinais had no insurable interest in the trailer, for in Nebraska, as in Missouri, the purchaser of a motor vehicle who holds no certificate of title has no insurable interest in the vehicle. Turpin v. Standard Reliance Insurance Co. (Mutual), 169 Neb. 233, 99 N.W.2d 26, 34–35[3–4][5–8], and see Calhoun v. Farm Bureau Mutual Insurance Company, 255 Iowa 375, 125 N.W.2d 121, 124–125. This policy has a so-called "open" mortgage clause, and reformation of the policy to include Erickson as loss payee thereon would still not cover Erickson, because under such an "open" mortgage clause the security holder's rights are no greater than those of the insured. Ramsey v. Farmers' Mut. Ins. Co. of Macon, Mo., 234 Mo.App. 1102, 1107, 139 S.W.2d 1027, 1029[2]. Moreover, such reformation of the contract was a prerequisite to recovery, since otherwise the policy would have been a mere wagering contract condemned by the law. Moore v. State Farm Mutual Automobile Ins. Co., Mo.App., 381 S.W.2d 161, 167.

Canal argues further that proof of mutual mistake justifying reformation must be clear, cogent and convincing, and there is no doubt that this is true. This is, nevertheless, a rule prescribed for the chancellor who hears the case, McCormick, Evidence, § 320, pp. 679–680, note 9 (1954), and while we review court-tried cases upon both the law and the evidence, we defer to the trial court's findings and opportunity to observe and judge the credibility of the witnesses testifying. Norman v. Durham, Mo., 380 S.W.2d 296, 299[2]. We cannot confidently say, for any reason assigned here, that the judgment rendered is clearly erroneous, and it is therefore affirmed.

TITUS, P. J., and STONE, J., concur.